1

2

3

4

5

6

7

8

9

The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  BOFI FEDERAL BANK, a federally chartered
banking institution,

11                                         Plaintiff,

12      v.

13  ADVANCE FUNDING LLC; KIRK A. TOVEY,
individually and as trustee of the KIRK A. TOVEY
14  REVOCABLE TRUST; and SETTLEMENT
COLLECTION SERVICE, LLC,

15

16                                         Defendants.

NO. 2:14-CV-00484-BJR

**DECLARATION OF SHEENA
VENZANT IN SUPPORT OF
MOTION FOR SUMMARY
JUDGMENT**

17

Sheena Venzant, being first duly sworn, on oath deposes and says:

18

19  1. I am of legal age and otherwise competent to testify to the matters stated herein
based on my own personal knowledge.

20

21  2. On November 16, 2011, I won the Washington State "Lucky for Life" lottery
drawing, which entitled me to annual installments of $52,000.00 per year throughout my
22  lifetime.

23

24  3. After winning the lottery prize, I was contacted by various companies about the
possibility of assigning some of my future lottery payments in return for a present lump sum
25  payment.   One of the individuals who contacted me was McLloyd Onwubere, a sales

26

DECLARATION OF SHEENA VENZANT - 1
2:14-cv-00484-BJR



Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

1014640.01

representative for BOFI Federal Bank. He came to Seattle and talked to me about doing an assignment transaction. Ultimately I entered into an agreement to assign certain of my future lottery installment payments to BOFI, in return for which I was to receive a lump sum payment. Attached hereto as Exhibit A is a true and accurate copy of the Lottery Payment Assignment Agreement and Terms Rider (the "BOFI Agreement").

4.  As part of the transaction, I was required to obtain a life insurance policy payable in favor of BOFI. I complied with all of the requirements that were asked of me, but month after month passed, and I still had not received the lump sum payment.

5.  As the months passed, I became increasingly unhappy and frustrated by the delay. At no time in the process had I agreed to delay or defer receiving the lump sum payment. I often complained to Mr. Onwubere about the delay and lack of action by BOFI. Sometimes, BOFI would try to appease me by sending a nominal gift card, but no one would tell me when my payment would be forthcoming.

6.  Even after Mr. Onwubere was no longer working for BOFI I talked to him about my concerns. He understood that I was frustrated and unhappy with the lengthy delay. We discussed cancelling the BOFI Agreement and how that could be accomplished. Attached hereto as Exhibit B is a copy of an email I received from Mr. Onwubere with some suggestions about how to proceed. He informed me that I would be required to pay back any advanced funds and the cost of the life insurance premium.

7.  On February 5, 2013, I wrote to BOFI and cancelled the transaction. Attached hereto as Exhibit C is a true and accurate copy of my cancellation notice. I made the decision to cancel the BOFI Agreement because, although it had been nearly a year, I had not received the lump sum payment I expected, and it did not appear that it would be forth coming anytime in the near future. In fact, at the time I cancelled the BOFI Agreement, BOFI had not obtained or even filed to obtain the appropriate judicial order necessary to validate the



Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

transaction. BOFI accepted my cancellation and demanded that I immediately return all funds that had been advanced to me. A copy of the letter from BOFI is attached hereto as Exhibit D.

8. After cancelling the BOFI Agreement, it was not my initial intent to pursue another assignment opportunity. However, several months later, I contacted Barbara Guerra, an account representative of Advance Funding LLC. Ms. Guerra was one of the representatives that had contacted me shortly after I won the lottery prize.

9. I did not consult with Ms. Guerra prior to cancelling the BOFI Agreement, nor did she or anyone from Advance Funding LLC try to persuade my to cancel the BOFI Agreement.

10. Ultimately, I did enter into an assignment transaction with Advance Funding LLC. Advance Funding LLC promptly sought and obtained the necessary judicial order approving the transaction and paid me the lump sum payment.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

DATED this 18th day of February, 2015.

Sheena Venzant

DECLARATION OF SHEENA VENZANT - 3
2:14-cv-00484-BJR



Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

1014640.01

*Exhibit A*
*to the Declaration of Sheena Venzant in*
*Support of Motion for Summary Judgment*

*United States District Court*
*Western District of Washington*

*2:14-cv-00484-BJR*

## LOTTERY PAYMENT ASSIGNMENT AGREEMENT

THIS LOTTERY PAYMENT ASSIGNMENT AGREEMENT (this "Agreement") is made and entered into on and as of this March 7, 2012, by and between Sheena Venzant, having a principal address at 12035 68th Ave. S, Seattle, WA 98178 ("Lottery Winner"), and Bofl Federal Bank, a federally chartered banking institution having a principal place of business at 12777 High Bluff Drive, San Diego, California 92130 ("Purchaser"). Lottery Winner and Purchaser are hereinafter sometimes referred to collectively as the "Parties," and, individually, each as a "Party."

### RECITALS:

A. Lottery Winner is the winner of a Washington Lottery prize in the initial face amount of approximately One Million Forty Thousand and 00/100 Dollars ($1,040,000.00) (the "Prize").

B. The Prize was won in the November 16, 2011 drawing of the Washington Lottery, and is payable in Twenty (20) installments (each an "Installment"), in the amount of Fifty Two Thousand and 00/100 Dollars ($52,000.00) each, commencing on or about November 16, 2011 and ending on November 16, 2030.

C. Lottery Winner desires to assign and sell, and Purchaser desires to accept and purchase, a portion or all of certain of the Installments, all upon the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the promises herein made, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. <u>Recitals</u>. The Recitals are hereby incorporated into this Agreement as if fully set forth herein.

2. <u>Assignment</u>. (a) Lottery Winner hereby assigns and sells to Purchaser the payments set forth as "Assigned Payments" in Paragraph 4 of the attached Terms Rider, which is hereby incorporated as if fully set forth herein and forms an integral part of this Agreement ( the "Assigned Payments").

(b) Upon Closing, as hereinafter defined, and subject to satisfaction of all Conditions Precedent, as also hereinafter defined, Purchaser shall pay to Lottery Winner the total amount set forth as the "Purchase Price" in Paragraph 5 of the attached Terms Rider, subject to any deductions, withholdings, holdbacks, or other adjustments to be made pursuant to this Agreement or required by applicable law, in full payment for the Assigned Payments (the "Purchase Price"). Anything to the contrary in the foregoing notwithstanding, Purchaser shall have the right to offset against the Purchase Price the full amount owed in connection with any advance or loan made to Lottery Winner by Purchaser and outstanding at Closing. .

LOTTERY PAYMENT PURCHASE AGREEMENT
Page 1 of 10



DECLARATION OF VENZANT - 5

3. <u>Legal Requirements</u>. The Parties acknowledge that RCW 67.70.100 mandates that a voluntary assignment of Washington Lottery prize payments may only be made pursuant to an order (a "Court Order") of the Superior Court of Washington (the "Court"). Purchaser shall commence and prosecute an action seeking a Court Order approving assignment of the Assigned Payments, and shall prepare and file all documents required in connection therewith.  Except for the fees and expenses charged by any attorney representing Lottery Winner, Purchaser shall be solely responsible for the cost of obtaining the Court Order and the Lottery Letter (as hereinafter defined). Lottery Winner consents to the jurisdiction of the Court as the venue for obtaining the Court Order, and designates the attorney named in Lottery Winner's "Designation of Independent Legal Counsel," attached hereto and by this reference made a part hereof, as Lottery Winner's agent for service of process in connection with all such proceedings. Lottery Winner shall cooperate with Purchaser in obtaining the Court Order, and shall promptly render such assistance and provide such information as Purchaser or its counsel may from time to time reasonably request. If requested by Purchaser, or required by the Court or the Washington Lottery, Lottery Winner, at Lottery Winner's sole cost and expense, shall appear in person at any proceeding or proceedings held in connection with obtaining the Court Order. In addition, Lottery Winner shall execute any and all additional documents reasonably required in connection with obtaining the Court Order, or otherwise needed for consummating the transaction contemplated hereby.

4. <u>Assignment of Agreement</u>.  Lottery Winner shall not assign this Agreement or its rights or obligations hereunder without Purchaser's prior written consent which may be granted or withheld in Purchaser's sole and absolute discretion. Purchaser, in its sole and absolute discretion, and without prior notice to or the consent of Lottery Winner, shall have the right to assign this Agreement, or any right or obligation it may have hereunder to one or more third parties (each an "Assignee"), and shall also have the right to designate an Assignee to be named as the assignee of the Assigned Payments for purposes of the Court Order.

5. <u>Representations and Warranties</u>. (a) As material inducement to Purchaser to enter into this Agreement and to take steps and incur costs in connection with discharging its obligations hereunder, including but not limited to paying the Purchase Price and accepting the Assigned Payments, Lottery Winner, represents and warrants that:

(1) Lottery Winner is the sole owner of the Assigned Payments, and has full power and authority to enter into this Agreement and discharge each of Lottery Winner's obligations hereunder without the consent of any third party except as otherwise specifically set forth herein.

(2) Lottery Winner won and claimed the Prize in accordance with all applicable laws, rules and regulations, including without limitation, the rules of the lottery game won.

(3) Lottery Winner does not owe any money to (i) any present or former spouse for support, maintenance or similar obligations, (ii) any child, or the guardian or legal custodian of any child, for child support or similar payments, or (iii) any governmental entity for payments made in connection with any spouse or child.

<u>LOTTERY PAYMENT PURCHASE AGREEMENT</u>
Page 2 of 10



DECLARATION OF VENZANT -   6

(4) Lottery Winner owns the Assigned Payments free and clear of any right, interest, or claim of any other person or entity. Lottery Winner has not previously assigned, pledged or otherwise encumbered any portion of the Assigned Payments.

(5) The Assigned Payments are not subject to any outstanding or unsatisfied judgment, levy or claim.

(6) Except as disclosed to Purchaser in writing prior to the date hereof, Lottery Winner (i) has not in the past filed for protection, or been the subject of a proceeding, under bankruptcy, insolvency or similar laws, (ii) is not contemplating filing for protection under bankruptcy, insolvency or similar laws, (iii) is not currently the subject of an involuntary bankruptcy or insolvency proceeding; and (iv) is not seeking to assign the Assigned Payments for purposes of evading creditors.

(7) There are no lawsuits or claims pending or threatened against Lottery Winner.

(8) Lottery Winner has paid or will pay all federal, state and local taxes due through the date of Closing.

(9) There are no outstanding or unsatisfied judgments or federal, state or local tax or other liens against Lottery Winner and/or otherwise affecting the Assigned Payments.

(10) Lottery Winner is not in arrears or default with respect to any student loan. Lottery Winner has not received Aid to Families with Dependent Children, food stamp benefits or low-income energy assistance benefits, and the Assigned Payments are not subject to any lien by a governmental agency to which repayment of such benefits are owed.

(11) Lottery Winner is an adult of sound mind, has entered into this Agreement of Lottery Winner's free will, and is not acting under duress, undue influence, or the influence of alcohol or other drugs.

(12) Any and all facts and representations made by or on behalf Lottery Winner herein, or otherwise to Purchaser in connection with the transaction contemplated hereby, are true, correct, complete and not misleading in any way, and are not subject to any material omissions.

(13) Lottery Winner has not received any advice regarding the tax consequences of the transaction contemplated hereby from Purchaser or any party acting on behalf of Purchaser, and Lottery Winner is relying solely upon Lottery Winner's own financial and tax advisors, who were not directly or indirectly referred by Purchaser, for any such advice.

(14) Lottery Winner consulted with independent legal counsel, and has had the opportunity to seek and receive independent financial and tax advice concerning the transaction contemplated hereby.

LOTTERY PAYMENT PURCHASE AGREEMENT     
Page 3 of 10

DECLARATION OF VENZANT  -   7

(15) Lottery Winner has not had a residential address in the past seven years other than as set forth on the Lottery Winners Declaration of Residence to this Sale Agreement attached hereto and incorporated herein by this reference.

(b) Lottery Winner authorizes Purchaser or its agents to conduct any investigation, including obtaining credit reports and undertaking other inquiries and searches, as Purchaser deems necessary or appropriate to confirm any information required by Purchaser in connection with the transaction contemplated hereby, and that any and all representations made by Lottery Winner with respect thereto are true, complete and not misleading. If Lottery Winner becomes aware of any fact or change of circumstances that would make any of such representations untrue or misleading, Lottery Winner shall immediately notify Purchaser thereof. All representations and warranties made herein and in connection with the transaction contemplated hereby shall survive Closing.

6. Conditions Precedent. The obligation of the Purchaser to complete the transaction contemplated by this Agreement is subject to the satisfaction (or waiver by the Purchaser) of each of the following conditions:

(a) The representations and warranties made by Lottery Winner shall be true and correct in all material respects as of the date of this Agreement and as of the date of Closing, except to the extent such representations and warranties expressly relate to another date (in which case such representations and warranties shall be true and correct as of such other date).

(b) Lottery Winner shall have performed or complied in all material respects with all obligations and covenants required by this Agreement and any collateral documents to be performed or complied with by Lottery Winner.

(c) There shall not be pending or threatened by any proceeding seeking to enjoin the transaction contemplated hereby, or seeking to obtain from Purchaser any damages with respect thereto.

(d) The Parties shall have implemented a payment procedure that ensures that the Assigned Payments are received by Purchaser on a timely basis without any diminution, offset or claim with respect to any liability of Lottery Winner or any beneficiary thereof.

(e) Purchaser shall have received the Evidence of Winning (as hereinafter defined), in form and substance satisfactory to Purchaser and its assigns in their sole and absolute discretion.

(f) The Court Order shall have been issued as a final and non-appealable order, in form and substance acceptable to Purchaser and its assigns in their sole discretion, directing the Washington Lottery to recognize this Agreement and to make the Assigned Payments, without reduction or  offset (other than federal income tax withholding), directly to Purchaser or its named assigns, at the payment address or addresses from time to time designated by Purchaser or such assigns pursuant to this Agreement, and receipt by Purchaser of a copy of the Court Order, certified to be a true and complete copy by an officer or clerk of the Court.

LOTTERY PAYMENT PURCHASE AGREEMENT 
Page 4 of 10

DECLARATION OF VENZANT  -   8

(g) Purchaser or its assigns shall have received a written acknowledgment from the Washington Lottery, in form and substance satisfactory to Purchaser and its assigns in their sole discretion, confirming that Lottery Winner is the winner of the Prize, including the Assigned Payments, in the amount described in this Agreement and acknowledging the Washington Lottery's unqualified agreement to make all of the Assigned Payments to Purchaser or its named assigns precisely as directed by the Court Order (the "Lottery Letter").

(h) Purchaser or its assigns shall have received final results of an investigation, including credit and other searches, as of the date of issuance of the Lottery Letter, which results are satisfactory to Purchaser and such assigns in their sole discretion.

(i) If the Assigned Payments are made by a private annuity provider, receipt by Purchaser and its assigns of a written acknowledgment from such annuity provider in form and substance satisfactory to Purchaser and its assigns in their sole discretion, confirming that Lottery Winner is the owner of the Prize, including the Assigned Payments, in the amounts described in this Agreement, and acknowledging such annuity provider's unqualified agreement to make all of the Assigned Payments to Purchaser or its named assigns in accordance with this Agreement and precisely as directed by the Court Order (the "Annuity Provider's Letter").

(j) The execution and completion by Lottery Winner, and delivery to Purchaser, of: (i) a complete IRS Form W-9 "Request for Taxpayer Identification Number and Certification," and (ii) all documents required by Purchaser in connection with this Agreement, and in connection with obtaining the Court Order, the Lottery Letter, and if applicable, the Annuity Provider's Letter."

Closing of the transaction contemplated hereby ("Closing") shall occur, and Purchaser or its assigns shall pay or distribute the Purchase Price to or on behalf of Lottery Winner as provided herein, on a date determined by Purchaser or its assigns in their sole discretion, but no later than three (3) business days after satisfaction of all of the foregoing conditions.

7. Intent of the Parties. The Parties intend that the sale and transfer herein contemplated constitute a true sale of the Assigned Payments, conveying good title thereto free and clear of any liens and encumbrances, from Lottery Winner to Purchaser or its assigns, and that such property not be part of Lottery Winner's estate or property in the event of any insolvency of Lottery Winner, or otherwise subject to claims against Lottery Winner. In furtherance of the foregoing and to assure the rights of Purchaser in the event that the transaction contemplated hereby is deemed to be a loan for any purpose, the Parties intend that Lottery Winner shall be deemed to have granted and does hereby grant to Purchaser a valid security interest in all of Lottery Winner's right, title and interest in and to the Assigned Payments, and that this Agreement shall constitute a security agreement under applicable law.

8. Indemnification. Lottery Winner agrees to defend, indemnify and hold harmless Purchaser and its officers, directors, shareholders, employers, and its successors and assigns (for purposes of indemnification collectively referred to as the "Purchaser Parties") from any and all claims, demands, damages, losses, actions, liabilities, causes of action or judgments (including attorney's fees) which any one of the Purchaser Parties may be required to pay or which may be

LOTTERY PAYMENT PURCHASE AGREEMENT   
Page 5 of 10

asserted against any one of the Purchaser Parties by reason of any claim to the Assigned Payments made by any person, entity, firm or corporation.

9. Cross Default. Any default of any obligation or covenant of Lottery Winner under this Agreement or any other agreement or document entered into or provided by Lottery Winner in connection with the transaction contemplated hereby, shall constitute a default of all agreements and documents executed by Lottery Winner in connection therewith, and Purchaser shall be entitled to pursue any remedy available therein or otherwise available under applicable law.

10. Constructive Trust. In the event that Lottery Winner defaults on the performance of the assignment contemplated by this Agreement, or receives any of the Assigned Payments after Closing, then Lottery Winner hereby grants and consents to the imposition of a constructive trust upon the Assigned Payments in favor of Purchaser, it being the intent of the Parties that Purchaser receive the full gross amount of the Assigned Payments.

11. Continuing Cooperation. Lottery Winner shall execute and deliver at any time, and from time to time, any additional instruments and documents, and promptly do any acts or things, as may be necessary or expedient to effectuate the terms and conditions of this Agreement in the sole discretion of Purchaser and its assigns, including retaining an attorney and filing any court documents necessary to obtain a Court Order approving the assignment contemplated by this Agreement. Lottery Winner hereby authorizes Purchaser or its assigns to correct any typographical errors or to make any ministerial revisions to this Agreement and to any other supporting documents signed by Lottery Winner if, in the sole discretion of Purchaser or such assigns, such revisions are appropriate to effectuate the terms and conditions of this Agreement. Lottery Winner shall promptly notify Purchaser in writing of any delay in performance or changes to the Assigned Payments, and shall furnish to Purchaser all information received by them or any of them regarding the Assigned Payments. Without limiting any other provision herein, Lottery Winner shall not accept or entertain any offer from a third party to purchase any portion of the Prize, if, in Purchaser's reasonable opinion, the acceptance or entertainment of such offer would likely interfere with or delay the assignment of the Assigned Payments as contemplated by this Agreement.

12. Miscellaneous. (a) The Parties represent and acknowledge that no broker, finder or other person was involved or instrumental in arranging the transaction set forth in this Agreement, and no person is entitled to a fee, payment, or commission in connection herewith.

(b) This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Washington. Any and all controversies, claims, disputes, rights, interests, suits or causes of action arising out of or relating to this Agreement and the negotiations related thereto, or the breach thereof, shall be settled by binding arbitration administered by the American Arbitration Association. The demand for arbitration shall be filed in writing with the other parties to this Agreement and with the American Arbitration Association offices in Seattle, Washington. The arbitration shall be held in Seattle, Washington. The arbitration shall be held before a single arbitrator selected in accordance with the Commercial Arbitration Rules of the American Arbitration Association in effect at the time that the demand for arbitration is filed. Discovery, specifically including interrogatories, production

LOTTERY PAYMENT PURCHASE AGREEMENT
Page 6 of 10



DECLARATION OF VENZANT -   10

of documents and depositions, shall be at the discretion of the arbitrator and, to the extent permitted, shall be conducted in accordance with and governed by the Federal Rules of Civil Procedure. A demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen. In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations. No arbitration arising out of or relating to this Agreement shall include, by consolidation or joinder or in any other manner, any additional person or entity not a party to this Agreement, except by written consent of the parties hereto, containing a specific reference to this Agreement and signed by the person or entity sought to be joined. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim, dispute or other matter in question not described in the written consent or with a person or entity not named or described therein. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity, duly consented to by parties to this Agreement, shall be specifically enforceable in accordance with applicable law in any court having jurisdiction thereof. The award rendered by the arbitrator shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof. Such arbitrator shall identify the substantially prevailing party and shall award legal fees and expenses for the substantially prevailing party.

(c) This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same Agreement.

(d) The section headings contained in this Agreement are for reference only and shall not affect in any way the meaning or interpretation of this Agreement.

(e) This Agreement constitutes the entire agreement and understanding of the Parties with respect to the matters and transaction contemplated hereby and supersedes any and all prior agreements and understandings with respect thereto. No representations have been made, or relied upon, by either Party except those set forth in this Agreement, including, but not limited to, any representations regarding the tax consequences of this transaction. The rights and obligations of Lottery Winner under this Agreement, including but not limited to the sale of the Assigned Payments, shall be binding upon Lottery Winner, Lottery Winner's heirs, assigns, transferees, successors and estate.

(f) If any provision of this Agreement is found to be invalid or unenforceable, the validity or enforceability of any other provision of this Agreement shall not be affected thereby.

(g) This Agreement may be amended or modified, and performance of any covenant or agreement herein contained may be waived or modified only by an instrument signed by the parties hereto. The waiver or modification by a party of performance or of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent or other performance or breach thereof.

13.   Adjustment of Purchase Price; Advances; Satisfaction of Judgments.   Lottery Winner acknowledges and agrees that the Purchase Price may be adjusted, if necessary, by

LOTTERY PAYMENT PURCHASE AGREEMENT
Page 7 of 10



subtracting an amount equal to the sum of (i) all Assigned Payments received by Lottery Winner after the date of this Agreement and prior to the Closing; plus (ii) any payments and advances made to Lottery Winner, or made on behalf of Lottery Winner, to a third party at or prior to the Closing. Any advances and payments to third parties by Purchaser shall be made, if at all, in Purchaser's sole and absolute discretion. In the event that any charges, encumbrances, judgments (including, without limitation, any pledges or assignments) liens or other claims should arise or be disclosed, then Lottery Winner shall satisfy these obligations at Closing. Lottery Winner agrees that any disbursements required for these satisfactions shall be paid from the proceeds of the assignment contemplated by this Agreement prior to any disbursement to Lottery Winner. In the event Purchaser elects to disburse some or all of the Purchase Price prior to obtaining all reports identifying charges, encumbrances, judgments, liens or other claims, Lottery Winner hereby agrees that Purchaser, or its assigns, may hold back from the disbursement two (2) times the total of such charges, encumbrances, judgments, liens or other claims as reasonably estimated by Purchaser. In such event, Lottery Winner shall execute any and all documentation reasonably requested by Purchaser to identify the amounts to be withheld and to evidence Lottery Winner's consent to such withholding.

14.     Filings. Lottery Winner authorizes Purchaser, and/or its assigns to make all filings and to take all other actions that Purchaser and/or its assigns, in their sole discretion, deem necessary or proper to complete the transactions contemplated hereby and to perfect the sale of the Assigned Payments, including, without limitation, filing one or more UCC-1 financing statements Lottery Winner or the Assigned Payments.

15.     Notices. Notices shall be deemed to have been duly given three (3) business days after having been mailed by certified or registered mail, return receipt requested, or upon delivery if delivered by a recognized overnight delivery service. All notices shall be mailed to the addresses of the Parties as hereinabove set forth, which addresses may be changed upon notice in accordance with the provisions of this paragraph.

16.     Special Irrevocable Durable Power of Attorney. Lottery Winner hereby grants Purchaser, or its assigns, a Special Irrevocable Durable Power of Attorney with full power of substitution, to act in Lottery Winner's name, place and stead regarding the Assigned Payments, including, without limitation, the authority to negotiate, endorse and execute checks, drafts and other instruments in Lottery Winner's name, the power to alter, edit and change payment instructions and/or beneficiary designations and any other act it deems necessary to obtain all the benefits of the bargain contemplated by this Agreement. This durable power of attorney shall be coupled with an interest, and shall survive Lottery Winner's death, disability, incompetence or incapacity. Lottery Winner declares this durable power of attorney to be irrevocable and renounces all right to revoke it or appoint any other person to perform the acts referred to in this provision. The Special Irrevocable Durable Power of Attorney herein granted is, and for all purposes shall be deemed to be, coupled with an interest.

[SIGNATURES ON FOLLOWING PAGE}

LOTTERY PAYMENT PURCHASE AGREEMENT 
Page 8 of 10

DECLARATION OF VENZANT -   12

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

PURCHASER:

BofI Federal Bank

By: _____ (SEAL)
      Eshel Bar-Adon

Title: Executive Vice President

LOTTERY WINNER:

_Sheena Venzant_    (SEAL)
                    3/7/12

LOTTERY PAYMENT PURCHASE AGREEMENT
Page **9** of **10**

DECLARATION OF VENZANT — 13

## TERMS RIDER

1. DATE OF PURCHASE AGREEMENT: **March 7, 2012**

2. PARTIES TO PURCHASE AGREEMENT:

    A. Seller --

        **Sheena Venzant**
        **12035 68th Ave. S**
        **Seattle, WA 98178**
        **SSN: xxx-xx-8055**

    B. Purchaser --

        **BofI Federal Bank**
        **12777 High Bluff Dr., Suite 100**
        **San Diego, CA 92130**

3. LOTTERY PRIZE INFORMATION:

    A. Lottery:              **Washington Lottery**
    B. Win Date (Year):     **November 16, 2011**
    C. Amount Won:        **$1,040,000.00**

4. ASSIGNED PAYMENTS:        **Nineteen (19) annual payments in the amount of Fifty Two Thousand and 00/100 Dollars ($52,000.00) each, commencing with the payment due and payable on or about November 16, 2012, and continuing through and including the payment due and payable on or about November 16, 2030**

5. PURCHASE PRICE:          **$405,000.00**

6. WINNER'S SPOUSE'S NAME:    **N/A**

7. WINNER'S SPOUSE'S SSN:    **N/A**

This Terms Rider is incorporated into and made a part of the Lottery Payment Assignment Agreement ("Purchase Agreement") to which this Rider is attached as if fully set forth therein.  Seller acknowledges that it is his/her intent to assign, sell, transfer, and convey to Purchaser the Assigned Payments described above.  Seller acknowledges that the closing and funding of the Transaction described herein and in the Transaction Documents is expressly contingent upon entry of a Court Order, as described in section 6(f) of the Purchase Agreement.



LOTTERY PAYMENT PURCHASE AGREEMENT
Page 10 of 10

DECLARATION OF VENZANT - 14

*Exhibit B*
*to the Declaration of Sheena Venzant in*
*Support of Motion for Summary Judgment*

*United States District Court*
*Western District of Washington*

*2:14-cv-00484-BJR*

From: **McLloyd Onwubere** <mclloydo@gmail.com>
Date: Tue, Feb 5, 2013 at 2:54 PM
Subject: Following Up
To: Sheena Venzant <sheshe0523@gmail.com>


Sheena - I am glad we touched base. I felt I need to speak to you and have you move on with your life in the right way.

So here is what you need to do. You need to cancel with the bank and your the insurance company. I have attached your contract, advance document ($15k), and insurance policy information.

Let's talk after you have a chance to review.


In the letter to the bank and the insurance company you should say the following;

FOR BANK -
To Whom It May Concern;

I am writing this letter to cancel my lottery payment assignment to BOFI Federal Bank and my current life insurance policy that names the bank as beneficiary of my life insurance policy. Due to family and financial reasons, I need to cancel my contract and transaction immediately.

I will pay back all monies owed to the bank which include my $15,000 advance and $3,308. 00 insurance premium.

Thanks,


FOR INSURANCE COMPANY
To Whom It May Concern;

I am writing this letter to cancel my current ING life insurance policy. Due to family and financial reasons, I need to cancel my contract and transaction immediately.


DECLARATION OF VENZANT -   16

1

Thanks,

2

*Exhibit C*
*to the Declaration of Sheena Venzant in*
*Support of Motion for Summary Judgment*

*United States District Court*
*Western District of Washington*

*2:14-cv-00484-BJR*

2/5/13

To Whom this may Concern;

I am writing this letter to cancel my lottery payment assignment to BOFI Federal Bank and my current life insurance policy, that names the bank as beneficiary of my life insurance policy. Due to family and financial reasons, I need to cancel my contract and transaction immediately.

I will pay back all monies owed to the bank which include my $15,000 advance and $3,308.00 insurance premium.

Thanks

Sheena Venzant

Esbel Bar-Adon (owner)
4350 La Jolla Villiage Dr.
Ste. 140
San Diego, Ca. 92122

*Exhibit D*
*to the Declaration of Sheena Venzant in*
*Support of Motion for Summary Judgment*

*United States District Court*
*Western District of Washington*

*2:14-cv-00484-BJR*



February 28, 2014

**VIA UPS**

Sheena Venzant
12035 68th Avenue S
Seattle, WA 98178

Dear Ms. Venzant:

As you know, to date, BofI Federal Bank ("BofI") has advanced a total of $15,000.00 to you. Pursuant to the Demand Promissory Note, Loan Agreement and First and Second Amendments to Loan Agreement (collectively, the "Loan Documents") that you signed in conjunction with the advance, all amounts due thereunder "shall be paid in a single payment due and payable upon Maturity, which shall occur on . . . demand of [BofI]." In accordance therewith, BofI hereby demands the immediate payment in full of any and all sums payable under the Loan Documents, including, without limitation, the $15,000.00 advance to you. By virtue of the demand made in this letter, the date of Maturity under the Loan Documents is the date hereof.

Please note that the Loan Documents provide that all "amounts due from Borrower hereunder shall be paid to Lender by good check payable to the order of Lender in immediately available funds and delivered to Lender's address for notices as set forth herein, or by wire transfer of funds. Payments must be received by Lender no later than 4:00 p.m. Eastern Time on the due date." In addition, the Loan Agreement provides that from "and after the Maturity, Borrower shall pay to Lender Interest on the total balance outstanding from time to time at the rate of eighteen percent (18%) per annum."

Please be guided accordingly.

Sincerely,

Eshel Bar-Adon
EVP/Chief Legal Officer

4350 La Jolla Village Drive, Suite 140, San Diego, CA 92122
Phone: 877-247-8002 • Fax: 858-350-0443
www.bofifederalbank.com



MEMBER
**FDIC**

DECLARATION OF VENZANT - 22