UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BOFI FEDERAL BANK, | )<br>) |
| *Plaintiff,* | )  CASE NO.   14-CV-00484-BJR<br>) |
| v. | )<br>) |
| | )  ORDER GRANTING PLAINTIFF'S<br>)  MOTION FOR SUMMARY JUDGMENT |
| ADVANCE FUNDING LLC, *et al.,* | )<br>) |
| *Defendants.* | )<br>) |

On April 2, 2014, Plaintiff BofI Federal Bank ("BofI") brought this diversity action against Defendant Advance Funding, LLC ("Advance"). Plaintiff's claims were dismissed by the Court in two orders issued on April 28, 2015, and August 20, 2015. As part of the lawsuit Defendant Advance brought a counterclaim against BofI asserting that BofI tortiously interfered with Advance's business relationships by bringing its lawsuit. Now before the Court is Plaintiff's Motion for Summary Judgment as to that counterclaim, Docket No. 69. The motion is fully briefed and ripe for resolution. For the reasons set forth below, Plaintiff's motion is granted.

I.   **Factual and Procedural Background**

This case concerns the lottery winnings of Sheena Venzant,[1] who on November 16, 2011, won the Washington State "Lucky for Life" lottery drawing, and elected to receive $52,000 annually for the rest of her life in lieu of a lump sum payment of $750,000. Decl. of Sheena Venzant, Docket No. 30 ("Venzant Decl.") ¶ 2; Decl. of Daniel Hefner, Docket No. 39 ("Hefner Decl."), Ex. A. On March 7, 2012, BofI and Ms. Venzant entered into an "assignment agreement" whereby BofI would pay Ms. Venzant a lump sum of $318,401.75 in return for Ms. Venzant's

---

[1] Venzant is not a party to this case, but has filed a declaration on behalf of Defendants.

assignment to BofI of twenty-five annual lottery payments of $47,000 each. Hefner Decl. Exs. C, D. This agreement was subject to a condition precedent – that BofI and Ms. Venzant obtain an order from the Thurston County Superior County approving the agreement. *Id.* at Ex. C. Before this condition precedent was satisfied, Ms. Venzant canceled the assignment agreement with BofI and, on May 21, 2013, entered into a new, largely similar assignment agreement with Advance. Decl. of Dan Cevallos, Docket No. 31 ¶ 3.

Plaintiff BofI brought this lawsuit against Advance and other Defendants in response, alleging tortious interference with contract and unjust enrichment. Plaintiff sought declaratory relief, money damages, attorney's fees, and costs.

On April 28, 2015, this Court granted Defendant Advance's Motion for Partial Summary Judgment, dismissing Plaintiff's claim of tortious interference with a contract. In a matter of first impression, the Court found that RCW § 67.70.100, which regulates contracts regarding the assignment of lottery winnings, was intended to promote the public policy of protecting lottery winners by requiring court approval of assignment contracts. Accordingly, because the agreement between Plaintiff and Venzant was not approved by a court, this Court held that the agreement was not a contract which could be used as the basis for a tortious interference with contract claim. *See* Order, Docket No. 42. On August 20, 2015, based on similar reasoning, the Court granted summary judgment to Defendants' as to Plaintiff's remaining claims of unjust enrichment and declaratory judgment. *See* Order, Docket No. 63.

## II. Standard of Review

Motions for summary judgment are evaluated pursuant to Federal Rule of Civil Procedure 56. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court "should review all of the evidence in the record . . . [and] draw all reasonable inferences in favor of the nonmoving party." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, a court should resolve all purely legal issues, as such issues are "a matter of law." Fed. R. Civ. P. 56(a).

### III. Analysis

Plaintiff contends that summary judgment should be granted as to Advance's counterclaim of tortious interference for three reasons. First, Plaintiff argues that Defendant has failed to provide sufficient evidence to establish the elements of tortious interference with contract. Second, Plaintiff argues that the *Noerr-Pennington* doctrine protects Plaintiff's right to bring suit and bars Defendant's counterclaim. Third, Plaintiff argues that Washington law approximates the *Noerr-Pennington* doctrine. Because the Court finds that Defendant's counterclaim is barred by the *Noerr-Pennington* doctrine, it does not reach Plaintiff's other arguments for summary judgment.

The *Noerr-Pennington* doctrine[2] provides that "those who petition any department of the government for redress are immune from statutory liability for their petitioning conduct." *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1006 (9th Cir. 2008) (citing *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006)). The doctrine is derived from the First Amendment's Petition Clause and protects the right to petition the government for the redress of

---

[2] The doctrine is derived from two Supreme Court cases, *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965), that established that the First Amendment's Petition Clause "immunizes [an individual] petitioning the legislature from antitrust liability." *Theme Promotions*, 546 F.3d at 1006-07.

grievances, which is "among the most precious of the liberties safeguarded by the Bill of Rights," and is "intimately connected both in origin and in purpose, with the other First Amendment rights of free speech and free press." *United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n*, 389 U.S. 217, 222 (1967).

The right to petition enshrined in the First Amendment and protected by *Noerr-Pennington* "extends to all departments of the government, including the . . . courts." *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000) (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)). The protection of the *Noerr-Pennington* doctrine applies not just to the act of petitioning the courts through the filing of a lawsuit but also to "[c]onduct incidental to a lawsuit, including a pre-suit demand letter . . . ." *Theme Promotions, Inc.*, 546 F.3d at 1007 (citing *Sosa*, 437 F.3d at 936-38).[3] In *Theme Promotions* the Ninth Circuit Court of Appeals applied the *Noerr-Pennington* doctrine to a state-law claim of tortious interference, the precise tort at issue in the instant case, holding that "'[t]here is simply no reason that a common-law tort doctrine can any more permissibly abridge or chill the constitutional right of petition than can a statutory claim such as antitrust.'" *Id.* (quoting *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1084 (5th Cir. 1988)). In other words, the *Noerr-Pennington* doctrine insulates a litigant from liability, such as from a counterclaim for tortious interference, because concerns over liability would otherwise chill a litigant's constitutional right to bring a lawsuit.

However, while the *Noerr-Pennington* doctrine protects the right to bring a lawsuit and conduct incidental to a lawsuit, this protection "may nevertheless be restricted . . . where [the

---

[3] Although Defendant Advance claims that Plaintiff tortiously interfered with its business relationship with fellow Defendant SCS, even were SCS a third party, the *Noerr-Pennington* doctrine has been applied in the context of cease-and-desist letters send to third parties. *See Modular Arts, Inc. v. Interlam Corp.*, 2007 WL 2069862 (W.D. Wash. July 13, 2007).

lawsuit or conduct incidental to said lawsuit] include[s] representations so baseless that the threatened litigation would fall into the 'sham litigation' exception." *Id.* (citing *Sosa*, 437 F.3d at 940-41). A litigant seeking to pierce the protection of the *Noerr-Pennington* doctrine, as Defendant seeks to do in the instant case, bears the burden of demonstrating "that the moving party's efforts to protect its legal rights were a 'sham.'" *Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*, 2014 WL 6452173, at *3 (W.D. Wash. Nov. 17, 2014). This test for "sham litigation" requires that the Defendant establish that "the lawsuit must be objectively baseless in the sense that no reasonable litigant could reasonably expect success on the merits." *Theme Promotions, Inc.*, 546 F.3d at 1007 (citing *Liberty Lake Invs., Inc. v. Magnuson*, 12 F.3d 155, 157 (9th Cir. 1993)). In other words, to invoke the protection of the *Noerr-Pennington* doctrine, a law suit must be one that a reasonable litigant might expect would succeed.

Defendant Advance contends that Plaintiff's lawsuit was a sham because BofI's failure to obtain an appropriate court order allowing the assignment of lottery proceeds prevented BofI from having a valid claim, as evidenced by the Court's dismissal of BofI's claim. *See* Def.'s Opp'n, Docket No. 72, at 19. Plaintiff's lawsuit was premised upon the claim that it had an enforceable contract with Ms. Venzant, and that Defendants were unjustly enriched by encouraging or enticing Ms. Venzant to breach her contract with Plaintiff so that she could sign a new contract with Defendants. This Court ultimately held that, as a matter of first impression, Plaintiff's agreement with Ms. Venzant was not an enforceable contract based upon the public policy concerns expressed in RCW § 67.70.100. The Court found that similar public policy concerns barred Plaintiff's claim for tortious interference with contract,[4] and Plaintiff's claim for unjust enrichment.[5]

---

[4] *See* Order, Docket No. 42, at 9-11.

[5] *See* Order, Docket No. 63, at 4-5.

Notably, however, in its Order the Court found that Plaintiff's agreement with Ms. Venzant "contained the essential elements of a contract." *See* Order, Docket No. 42, at 6-8. The Court reached no conclusion as to whether Plaintiff had established the elements of tortious interference with contract because there appeared to be a dispute of fact as to several of the elements. *Id.* at 1-5. Thus, the Court's grant of summary judgment against Plaintiff was premised principally on the Court's finding of public policy concerns expressed by the Washington legislature in RCW § 67.70.100 which, as noted above, was a matter of first impression. *Id.* at 8-11.[6]

Because the Court's holding regarding the public policy concerns expressed in RCW § 67.70.100 was a matter of first impression, Plaintiff could not have anticipated how the Court would rule. As such, Plaintiff acted reasonably in bringing suit to protect its asserted legal rights. Accordingly, the Court finds that Plaintiff's lawsuit was not "objectively baseless in the sense that no reasonable litigant could reasonably expect success on the merits." *Theme Promotions, Inc.*, 546 F.3d at 1007. In other words, Plaintiff had sufficient grounds to bring this lawsuit and reasonably could have expected success on the merits. Defendant Advance has therefore failed to establish that Plaintiff's lawsuit was a "sham."

Defendant having failed to establish that Plaintiff's lawsuit was a sham, the protection of the *Noerr-Pennington* doctrine applies to the bringing of the suit. Plaintiff is protected from liability and Defendant's counterclaim of tortious interference, which is premised upon alleged harm caused by Plaintiff's lawsuit and conduct incidental to the lawsuit, is barred. The Court therefore grants Plaintiff's motion for summary judgment as to Defendant's counterclaim.

---

[6] The Court also granted Defendant summary judgment as to Plaintiff's unjust enrichment claim because of said public policy concerns. *See* Order, Docket No. 63, at 4-5

## IV. Conclusion

Having considered the parties' arguments, the relevant case law, and the entire record, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment on Defendant Advance Funding's Counterclaim, Docket No. 69, is **GRANTED**. All issues in this case now being resolved, this case is **CLOSED**.

DATED this 4th day of December, 2015.

*[signature]*
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE