The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BOFI FEDERAL BANK, a federally chartered banking institution,

Plaintiff,

v.

ADVANCE FUNDING LLC; KIRK A. TOVEY, individually and as trustee of the KIRK A. TOVEY REVOCABLE TRUST; and SETTLEMENT COLLECTION SERVICE, LLC,

Defendants.

NO. 2:14-cv-00484-BJR

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF DISMISSAL**

**Note on Motion Calendar: Friday, October 12, 2018**

**ORAL ARGUMENT REQUESTED**

## I.    RELIEF REQUESTED

Pursuant to Fed. R. Civ. P. 56, Defendants move to dismiss Plaintiff's Complaint.  The undisputed evidence in this case has established that Sheena Venzant voluntarily cancelled her arrangement with BOFI Federal Bank ("BOFI") months before entering into a new assignment contract with Advance Funding LLC ("Advance Funding").  As a matter of law, BOFI cannot sustain a tortious interference claim, and once the interference claim is dismissed, there is no basis to sustain the remaining claims for unjust enrichment and declaratory relief.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 1
Cause No. 2:14cv-00484-BJR

1698521.01



Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

## II.   OVERVIEW

This case concerns the assignment of future lottery payments originally won by Sheena Venzant ("Ms. Venzant").  In 1997, the Legislature enacted laws establishing the process and procedure by which lottery prizes in the State of Washington may be assigned. RCW Ch. 67.70.

BOFI's tortious interference claim was previously dismissed on the grounds that BOFI did not have an enforceable contract since it had failed to comply with the statutory requirements governing lottery assignments.  [Dkt. 42.]  The collateral claims were also dismissed.  [Dkt. 63.]  BOFI appealed and the case is now back before this Court.  In the interim, Advance Funding became financially incapable of proceeding and instructed counsel to withdraw. [Dkt. 96.] The remaining Defendants, Settlement Collection Service, LLC ("SCS") and Kirk Tovey individually and the Kirk A. Tovey Revocable Trust (the "Trust" or collectively "Tovey") continue to actively defend the claims and bring this motion.

## III.   STATEMENT OF ISSUES

1.    Where the Plaintiff cannot establish material elements of the tortious interference claim as a matter of law, should the Complaint be dismissed?

2.    Should the unjust enrichment claim be dismissed where there was no benefit conferred and no wrongful or unjust act?

3.    Should the request for declaratory relief be denied on the grounds that this Court lacks the power to undo a lawfully issued State Court Order pertaining to an issue of state statutory law?

## IV.   EVIDENCE RELIED UPON

This Motion is based on the previously filed Declaration of Sheena Venzant and exhibits thereto [Dkt. 30] and the Declaration of Dan Cevallos [Dkt. 31], the Declaration of Richard E. Miller, III, In Support of Motion for Summary Judgment ("Miller Decl."), the

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 2
Cause No. 2:14cv-00484-BJR

1698521.01

RS   Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

Declaration of Susan Fox, with exhibits and excerpts from the SCS 30(b)(6) deposition (the "SCS Dep.), attached as Exhibit 13, and the Trust 30(b)(6) deposition (the "Trust Dep."), attached as Exhibit 14,  appended thereto ("Fox Decl."), and the records and files herein.

## V.     STATEMENT OF FACTS

On November 16, 2011, Ms. Venzant won the Washington State "Lucky for Life" lottery drawing, payable in annual installments of $52,000.00, which continue for the life of the lottery winner.  [Dkt. 1, at 3.1; Dkt. 30.]  The "Lucky for Life" game is administered through the Washington State Lottery Commission and is subject to RCW Ch. 67.70.

BOFI alleges (and Defendants accept for purposes of this motion only) that on March 7, 2012, Ms. Venzant agreed to assign certain of her future lottery installment payments, referred to in the Complaint as the "BOFI Agreement."  [Dkt. 30, Ex. A.]  In return for allegedly agreeing to transfer $1,175,000.00 worth of future lottery installments, Ms. Venzant was to receive $318,401.75.  *Id.*

The BOFI Agreement specified that the assignment "**may only** be made pursuant to an order (a "Court Order") of the Superior Court of Washington…"  *Id. (emphasis added*)  Further, the BOFI Agreement set, as a defined condition precedent, that (i) the "Court Order shall have been issued as a final and non-appealable order," and (ii) that a written acknowledgment of the Court Order from the Washington Lottery Commission (the "Lottery Letter") was required.  *Id.*  Closing of the transaction was contingent upon "satisfaction of all of the foregoing conditions."  *Id.*  The Terms Rider addendum to the BOFI Agreement also expressly states that closing and funding of the transaction "is expressly contingent upon entry of a Court Order, as described in section 6(f) of the Purchase Agreement."  *Id.*

It is undisputed in this case that BOFI:

- Never filed pleadings to seek Court approval of the proposed transfer;


Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

- Never obtained a "final and unappealable" Court Order authorizing the transfer;
- Never notified the Lottery Commission of the proposed transfer;
- Never notified the Attorney General's office of the proposed transfer;
- Never received a written acknowledgment of the Court Order from the Lottery Commission; and
- Never paid Ms. Venzant, or any one, the promised purchase price.

Instead of going to Court to get the assignment approved, BOFI spent the next several months trying to get insurance coverage because the lottery payments were life contingent. By August 1, 2012, BOFI knew that a two-year contestability period would be required by the insurance company, causing the need to restructure the Venzant deal and delay funding to Ms. Venzant. (Fox Decl., Ex. 1.)

Meanwhile, Ms. Venzant was already in financial distress. On August 21, 2012, Ms. Venzant pleaded with McLloyd Onwubere, her BOFI representative: "please help help help . . .i am in need really bad . . . uggh I am so stressed that I am not even approachable at this moment." (Fox Decl., Ex. 2.) Mr. Onwubere reported that he believed Ms. Venzant would agree to a revised contract but that she would certainly need an additional advance of funds. (Fox Decl., Ex. 3.)

On August 25, 2012, Ms. Venzant once again told BOFI of her dire financial situation: behind on her rent and facing a possible eviction; vehicle tabs due; school supplies for her kids needed. "Please help me." (Fox Decl., Ex. 4.) Unable to wait much longer, Ms. Venzant acquiesced to the concept of a funding postponement, in return for a $25,000.00 cash advance. (Fox Decl., Ex 5.) However, there is no evidence that the BOFI Agreement was ever amended to reflect the delay and no evidence of any additional payment to Ms. Venzant.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 4
Cause No. 2:14cv-00484-BJR

RS Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

After all the back and forth and nearly a year of waiting to receive the promised lump sum payment from BOFI, it is no wonder that Ms. Venzant - the "Stressed Single Mom" - was finally done.  She was unhappy and frustrated with BOFI's lack of action and the interminable delay, and was ready to move on with her life.  [Dkt. 30.]  Ms. Venzant expressed her frustration to Mr. Onwubere and openly discussed her desire to cancel the BOFI Agreement.  On February 5, 2013, Mr. Onwubere told Ms. Venzant exactly what she needed to do to cancel the transaction.

> From: **McLloyd Onwubere** <mclloydo@gmail.com>
> Date: Tue, Feb 5, 2013 at 2:54 PM
> Subject: Following Up
> To: Sheena Venzant <sheshe0523@gmail.com>
>
> Sheena - I am glad we touched base. I felt I need to speak to you and have you move on with your life in the right way.
>
> So here is what you need to do.  You need to cancel with the bank and your the insurance company. I have attached your contract, advance document ($15k), and insurance policy information.
>
> Let's talk after you have a chance to review.
>
> In the letter to the bank and the insurance company you should say the following:
>
> FOR BANK
> To Whom It May Concern:
>
> I am writing this letter to cancel my lottery payment assignment to BOFI Federal Bank and my current life insurance policy that names the bank as beneficiary of my life insurance policy.  Due to family and financial reasons, I need to cancel my contract and transaction immediately.

[Dkt. 30, Ex. B.]  That same day, Ms. Venzant wrote the following letter and cancelled the BOFI Agreement:

> *2/5/13*
>
> **To Whom this may concern;**
>
> **I am writing this letter to cancel my lottery payment assignment to BOFI Federal Bank and my current life insurance policy that names the bank as**

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 5
Cause No. 2:14cv-00484-BJR

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

1698521.01

1

*beneficiary of my life insurance policy. Due to family and financial reasons, I need to cancel my contract and transaction immediately.*
2
        *I will pay back all monies owed to the bank which include my $15,000 advance and the $3,308.00 insurance premium.*
3

                            *Thanks*
4                          *Sheena Venzant*

5   [Dkt. 30, Ex. C.]

6       Mr. Onwubere is not now, and never has been an employee of, or agent for Advance

7   Funding or the Defendants.  [Dkt. 31]; (Miller Decl., ¶12).  Prior to cancelling the BOFI

8   Agreement, Ms. Venzant did not consult with, and no one from, or on behalf of Advance

9   Funding or the Defendants tried to persuade her to cancel with BOFI.  [Dkt. 30, ¶9.]

10      After cancelling the BOFI Agreement, Ms. Venzant did not initially pursue another

11  assignment opportunity.  However, several months later, Ms. Venzant contacted Barbara

12  Guerra, an account representative of Advance Funding.  [Dkt. 30, ¶8.]  During the

13  negotiations, Ms. Venzant told Advance that she had previously had a contract with BOFI but

14  that she had terminated the BOFI Agreement by a formal letter.  (Fox Decl., Ex 6.)

15  Ms. Venzant faxed a copy of the cancellation letter to Advance Funding from her work

16  address.  (Fox Decl., Ex. 7.)  Advance also conducted a search of court records, looking for

17  any petition or court order concerning Ms. Venzant.  Finding none, Advance was satisfied that

18  Ms. Venzant had terminated the BOFI Agreement and that BOFI had never obtained the

19  required Court Order or Lottery Letter needed to assign Ms. Venzant's lottery payments.

20  (Miller Decl.)

21      On May 17, 2013, Ms. Venzant entered into an assignment transaction with Advance

22  Funding.  [Dkt. 31, ¶3.]  Having secured the Assignment Agreement, Advance Funding then

23  contacted various potential investors, including SCS, to determine if it was interested in

24  acquiring the income stream for itself or on behalf of an SCS client.  SCS is in the business of

25  purchasing income streams as investment opportunities for clients.  (SCS Dep., 25:3-9.)

26

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 6
Cause No. 2:14cv-00484-BJR

1698521.01

RS  Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

On May 21, 2013, SCS received an offer to bid for the income stream.  (SCS Dep., 51:4-24.)  As was typical of transactions with Advance Funding, SCS was only provided the bare details of the transaction: the number and amount of payments assigned; the length of the assignment; and the state of origin.  (SCS Dep., 37:17-24; Fox Decl., Ex. 8.)  At that point, SCS was not given any details about the individual lottery winner, including the winner's name.  *Id*.  SCS submitted a bid to acquire the income stream for its client, the Kirk A. Tovey Revocable Trust.

After accepting the SCS bid, Advance Funding filed a petition in Thurston County Superior Court.  The Court granted the petition and approved the transfer from Venzant to Advance Funding and the assignment from Advance Funding to the Tovey Trust.  The Order is dated June 6, 2013.  (Fox Decl., Ex. 12.)

After obtaining the Order, Advance Funding sent SCS a closing binder which contained all of the information and pleadings relevant to the transaction.  (Miller Decl.)  This was the first time SCS was made aware of Ms. Venzant's name.  *Id.*  The closing binder was reviewed and approved by SCS counsel and the deal closed.  (Miller Decl. at ¶9.)  Thereafter, Ms. Venzant finally received her lump sum payment.  [Dkt. 30, ¶10.]

At no point in the entire transaction was there ever any communication between SCS and Ms. Venzant.  No one at SCS was even aware of Ms. Venzant's name until after she had signed the Transfer Agreement with Advance Funding and Court Order had been obtained and closing binder delivered.  (Miller Decl., ¶11.)

Neither the Trust nor Mr. Tovey had any contact.  The Trust relies on SCS to recommend potential opportunities.  (Trust Dep., 28:22-25 – 29:1-4.)  Neither the Trust nor Mr. Tovey had any knowledge of or contact with Advance Funding, Sheena Venzant, or BOFI.  (Trust Dep., 8:1-12; 12:5-19; 17:19-25 – 18:1-4; 34:14-18.)

Ten months later on February 12, 2014, a new BOFI representative, Chris Husong, attempted to contact Ms. Venzant.  Ms. Venzant was understandably confused and irritated:

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

"I do not appreciate you calling my work at all. . . .I have not heard from you in months." (Fox Decl., Ex. 9.)  Mr. Husong claimed he had sent gift cards (which Ms. Venzant never received) and offered to send an advance of money and a cellular phone.  Ms. Venzant flatly declined and told BOFI: "No I do not want a cell phone."  And 22 minutes later:  "I don't want deposit of any money . . . nor gift cards. . . .You should have received a letter from me months ago."  (Fox Decl., Ex. 10.)

On February 19, 2014, Venzant was unequivocal when she wrote:

> I have no clue why you are trying to contact me.  I mailed a cancellation letter to you [BOFI] a while back bout a year ago.  The transaction has been cancelled a long time ago.  would [*sic*] you like for me to send you another copy of this letter?  I did keep the original just in case this happen [*sic*] that you say that you were not aware of any letter.  Also I thought the well being of me and the deal that I had worked out back when Mccloyd [*sic*] was there had been no longer a deal especially when I started getting letters from the insurance company stating that this was at risk to lapse a long time ago and I had to pay out my pocket to keep it active…So I don't think this is even a issue for our deal any more.  Again I can send you another copy of this letter if you like.

(Fox Decl., Ex. 11.)

On February 28, 2014, Eshel Bar-Adon, Executive Vice President and Chief Legal Officer of BOFI, wrote a letter to Venzant demanding the immediate return of the $15,000 BOFI advanced to her along with 18% annual interest.  This letter acknowledged that the BOFI Agreement had been cancelled.  [Dkt. 30, Ex. D.]

## VI.    AUTHORITY

**A.    Summary judgment standard.**

Fed. R. Civ. P. 56(c) states that summary judgment shall be rendered in the moving party's favor,

> if the pleadings, the discovery and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

1   The moving party is entitled to judgment as a matter of law when the nonmoving party

2   fails to make a sufficient showing on an essential element of his case with respect to which he

3   has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court

4   must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus.*

5   *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

6   The central issue is "whether the evidence presents a sufficient disagreement to

7   require submission to a jury or whether it is so one-sided that one party must prevail as a

8   matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The moving

9   party bears the initial burden of showing the district court "that there is an absence of

10  evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. The

11  moving party can carry its initial burden by producing affirmative evidence that negates an

12  essential element of the nonmovant's case, or by establishing that the nonmovant lacks the

13  quantum of evidence needed to satisfy its burden of persuasion at trial. *Nissan Fire & Marine*

14  *Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts

15  to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus.*

16  *Co.*, 475 U.S. at 585-87.

17  In supporting a factual position, a party must "cit[e] to particular parts of materials in

18  the record . . .; or show[] that the materials cited do not establish the absence or presence of a

19  genuine dispute, or that an adverse party cannot produce admissible evidence to support the

20  fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party "must do more than simply show that

21  there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475

22  U.S. at 585. "[T]he requirement is that there be no *genuine* issue of material fact. . . . Only

23  disputes over facts that might affect the outcome of the suit under the governing law will

24  properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48 (emphasis

25  in original). Also, "[t]he mere existence of a scintilla of evidence in support of the non-

26  moving party's position is not sufficient[]" to defeat summary judgment. *Triton Energy*

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 9
Cause No. 2:14cv-00484-BJR

RS   Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

1698521.01

1  *Corp, v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Likewise, the nonmoving party

2  "cannot defeat summary judgment with allegations in the complaint, or with unsupported

3  conjecture or conclusory statements."  *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107,

4  1112 (9th Cir. 2003).

5  **B.     There are no material facts in dispute regarding defects in Plaintiff's tortious
6          interference claim.**

7       1.   <u>Tortious interference requires knowledge of the existence of a valid and
8            enforceable contract, and intentional interference by improper purpose or
             means.[1]</u>

9        The elements of a tortious interference claim are well established.  The Plaintiff must

10  prove a valid contract; that Defendants had knowledge; that the Defendants interfered causing

11  termination of the contract by improper purpose or means; and resultant damages.  *Kane v.*

12  *City of Bainbridge Island*, 866 F. Supp.2d 1254, 1265 (W.D. Wash. 2011); *Point Ruston, LLC*

13  *v. Pac. Northwest Reg'l Council*, 658 F. Supp.2d 1266, 1275 (W.D. Wash. 2009) *citing*

14  *Eggster v. City of Spokane*, 121 Wash. App. 799, 811, 91 P.3d 117 (2004).

15        In particular, tortious interference requires proof that the Defendants intentionally

16  interfered causing the termination of the contract, for an improper purpose or by improper

17  means.  *National City Bank v. Prime Lending*, 737 F. Supp.2d 1257 (E.D. Wash.  2010);

18  *Pleas v. City of Seattle*, 112 Wash.2d 794, 774 P.2d 1158 (1989).  In this case, Plaintiff has

19  not and cannot establish that the Defendants had prior knowledge of the BOFI Agreement or

20  that they induced Ms. Venzant to cancel the arrangement.

21        The facts unequivocally demonstrate that, after nearly a year of waiting to receive her

22  lump sum payment, Ms. Venzant became unhappy and frustrated with BOFI and elected to

23  voluntarily cancel the BOFI Agreement.  [Dkt. 30.]  Ms. Venzant's decision to cancel the

24  BOFI Agreement was based on her own judgment in consultation with Mr. Onwubere, the

25
26
---
[1] Although, for purposes of the Motion, only two elements of the cause of action are discussed, Defendants are
not waiving and specifically reserve the right to challenge each and every element of the claim.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 10
Cause No. 2:14cv-00484-BJR

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

former sales representative for the Plaintiff.  [Dkt. 30.]  There is no evidence that Ms. Venzant was encouraged or induced to cancel the contract by anyone employed by or acting on behalf of the Defendants or Advance Funding.  *Id*.

Ms. Venzant did not even contact Advance Funding until several months after she canceled the BOFI Agreement regarding the possibility of a new transfer.  [Dkt. 30.]  At that time, she produced proof that she had canceled the BOFI Agreement and therefore Advance Funding was free to proceed.  [Dkt. 30, Exhibit C.]  Advance Funding conducted an investigation and confirmed that BOFI had not obtained the assigned payments:  no petition had been filed; no Court Order obtained; and no authorization from the Lottery Commission. Even if Advance Funding had subsequently been made aware of the BOFI Agreement, such knowledge was after Ms. Venzant's cancellation of the Agreement.  There is no evidence that Advance Funding, or anyone acting on its behalf, interfered with the agreement or induced Ms. Venzant to cancel.  Ms. Venzant's decision to cancel occurred many months before Advance Funding was ever contacted.

Moreover, there is absolutely no legal basis for a tortious interference claim against SCS or Tovey.  Neither SCS nor Tovey had any contact with Ms. Venzant.  SCS did not even know the name of the lottery winner until it received the closing binder, which was well after Ms. Venzant sent the cancellation letter to BOFI; after she entered into a transfer agreement with Advance Funding; and after the Court had approved the transfer.  Neither SCS nor Tovey had any prior knowledge of the BOFI Agreement and there is no evidence that they intentionally interfered.

Even if this Court were to find that Advance Funding interfered (which should be unlikely) there is still no legal basis for imposing liability as against SCS or Tovey.  They had no direct involvement and were not agents or employees of Advance Funding.

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1
2

**C.    When the tortious interference claim is dismissed, the remaining claims for unjust enrichment and for declaratory relief are unsustainable.**

3

4

5

6

7

Dismissal of Plaintiff's tortious interference claim necessarily requires dismissal of the unjust enrichment and declaratory judgment claims because those claims are predicated on a finding of tortious interference to sustain a cause of action.  The elements necessary for unjust enrichment and declaratory judgment cannot be established if the tortious interference claim is dismissed.

8

1.    <u>Unjust enrichment cannot stand where BOFI did not confer a benefit on Defendants.</u>

9

10

11

BOFI's unjust enrichment claim is deficient for two reasons.  First, BOFI did not confer a benefit on the Defendants, and second, Defendants' conduct was not wrongful or inequitable.

12

13

14

15

16

17

18

19

"Three elements must be established in order to sustain the claim based on unjust enrichment: a benefit conferred upon the defendant by the plaintiffs; an appreciation or knowledge by the defendant of the benefit; and the acceptance or retention by the defendant of the benefit under such circumstances as to make it unequitable for the defendant to retain the benefit without the payment of its value."  *Baillie Communications Limited v. Trend Business Systems, Inc.*, 61 Wash. App 151, 159-60, 810 P.2d 112 (1991) quoting Black's Law Dictionary, Sixth Edition, 1990; *Young v. Young*, 164 Wash. 2d 477, 484, 191 P.3d 1258 (2008).  Here, Plaintiff cannot establish facts to support any element.

20

21

22

23

24

BOFI alleges that Ms. Venzant's future lottery payments were the benefit the Defendants wrongfully obtained.[2]  This argument is specious because BOFI did not own or control Ms. Venzant's future lottery payments, and therefore could not have "conferred" them on the Defendants.  At most, the BOFI Agreement was an inchoate contract for the lottery

25

26

---

[2] Plaintiff claims "[t]he vast majority of the value [Defendants] received belonged to BOFI, as the BOFI Agreement and Addendum covered the vast majority of the same payments that Ms. Venzant assigned to Advance Funding." [Dkt. 1, pg. 6:14-16.]

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1698521.01

payments.  In fact, the BOFI Agreement, was expressly conditioned on obtaining a final and nonappealable Court Order and a written acknowledgment from the Lottery Commission – neither of which event ever happened.  Unless and until the Court authorized the assignment, BOFI did not own or control the future payments.  Whether BOFI could ultimately sue Ms. Venzant for breach of the BOFI Agreement is beside the point.  Without approval from the Court, BOFI did not own or control the lottery payments – and therefore did not confer anything for the benefit of the Defendants.

In this case, Ms. Venzant (who *did* own and control the payments) assigned a portion of her future lottery payments to Advance Funding.  In the Court Order issued by the Thurston County Superior Court, the Court authorized the transfer of the lottery payments from Ms. Venzant to Advance Funding, and then approved the assignment of those payments from Advance Funding to the Trust.  (Fox Decl., Ex. 12.)  To the extent that the Trust received a benefit, it came as a result of the assignment from Advance Funding.[3]  For its part, SCS, simply acted as an intermediary and received none of the lottery payments.

Plaintiff cannot establish unjust enrichment for something conferred on the Defendants by a third party.

      2.    <u>There is no wrongful or unjust act.</u>

No facts support the assertion that Advance Funding's contract with Ms. Venzant was wrongful or inequitable.  One of the three distinct elements of an unjust enrichment claim is that the Defendants' acceptance or retention of some benefit is inequitable and wrongful. *Lynch v. Deaconess Medical Center*, 113 Wn. 2d, 162, 165, 776 P.2d, 681 (1989) ("[t]he enrichment of the defendant must be unjust.").

---

[3] In any event, the Trust acquired the lottery payments as part of a transaction whereby it provided the funding for the purchase price to Ms. Venzant.  Other than a few measly advances, BOFI never paid Ms. Venzant the promised lump sum.

RS  Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1    The entire basis for the unjust enrichment claim is the assertion that Defendants

2 tortiously interfered with BOFI's agreement.  As set forth above, there is no factual basis for

3 the tortious interference claim against Advance Funding.  But even if there was such a claim

4 as to Advance Funding, there is no similar liability as to SCS, Mr. Tovey, or the Trust.  SCS

5 and the Trust had no contact with Ms. Venzant and were not even aware of her name until

6 after the Court had already approved the assignment.  There is no basis for finding wrongful

7 or inequitable conduct.

8    The Plaintiff cannot sustain the unjust enrichment claim where it had no right to

9 Ms. Venzant's payments and it did not "confer" anything of value on the Defendants.  The

10 unjust enrichment claim should be dismissed.

11 **D.     The Court has no authority to grant the request for declaratory relief.**

12    Styled as a request for declaratory relief, BOFI is essentially seeking to have this

13 Court undo a lawfully entered Order from the Thurston County Superior Court, and award it

14 Ms. Venzant's future lottery stream payments.   BOFI did not intervene in the Thurston

15 County action, or challenge the Order in that venue.  Moreover, Ms. Venzant, whose future

16 payments are at issue, was never made a party to this action.  This Court may not, and should

17 not, reverse the Order of a State Superior Court Judge, on a matter of purely State statutory

18 law.

19    Federal district courts possess no power to review or modify state court decisions.

20 *Confederated Tribes of Colville Reservation v. Superior Court of Okanogan Cty.,* 945 F.2d

21 1138, 1141 (9th Cir. 1991); *Atlantic Coast Line R.R. v. Locomotive Engineers*, 398 U.S. 281,

22 296, 90 S.Ct. 1739, 1748, 26 L.Ed.2d 234 (1970).  The federal courts must give the same

23 preclusive effect to a state court judgment as the state courts of that state would themselves

24 give to that judgment.  28 U.S.C. § 1738.  "Due in no small part to the fundamental

25 constitutional independence of the States, Congress adopted a general policy under which

26

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 14
Cause No. 2:14cv-00484-BJR

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1698521.01

1 state proceedings 'should normally be allowed to continue unimpaired by intervention of the

2 lower federal courts, with relief from error, if any, through the state appellate courts and

3 ultimately [the Supreme] Court.'" *Chick Kam Choo v. Exxon Corp*., 486 U.S. 140, 145–46,

4 108 S. Ct. 1684, 1689, 100 L. Ed. 2d 127 (1988) citing *Atlantic Coast Line R. Co*., 398 U.S. at

5 287.

6   A party may not obtain an injunction in federal district court against the enforcement

7 of a state court order. *Atlantic Coast Line R. Co*. 398 U.S. at 287.   "A court of the United

8 States may not grant an injunction to stay proceedings in a State court except as expressly

9 authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or

10 effectuate its judgments." 28 U.S.C. § 2283.   Relief from a state court order may be sought in

11 state court or, if the final decision of the highest state court is adverse, then in the US

12 Supreme Court, but relief from a state court order cannot be obtained in a US District Court.

13 *Colville Tribes*, 945 F.2d at 1142.

14   In its claim for declaratory relief, BOFI actually seeks an injunction, in that it asks this

15 Court to vacate and set aside the Thurston County Superior Court's order. (*See, e.g. Nken v.*

16 *Holder*, 556 U.S. 418, 428, 129 S. Ct. 1749, 1758, 173 L. Ed. 2d 550 (2009): injunction is

17 "means by which a court tells someone what to do or not to do.")   BOFI offers no legal

18 support for such relief, and indeed none exists: well-established case law precludes this Court

19 from reviewing the actions of the Thurston County Superior Court, let alone vacating its

20 orders.   As the Eastern District of California held when faced with this same issue:

21     "It is clear that this court has no authority to grant the requested relief. The

22     federal district court has no power to review the actions of the Shasta County
      Superior Court or to set aside its orders. Our Constitution contemplates a dual

23     system of federal and state courts, which cannot function if federal courts
      intervene in state judicial proceedings. The state courts are constitutionally

24     entitled to independence. …Absent a specific constitutional or statutory grant
      of authority, which is absent here, <u>this court simply has no authority to</u>

25     <u>invalidate state court orders</u>."

26

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 15
Cause No. 2:14cv-00484-BJR

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1698521.01

1    *Sharma v. City of Redding*, unreported, No. 217CV00487MCEACPS, 2017 WL 2610064, at

2    *2 (E.D. Cal. June 16, 2017), order amended and superseded, No. 217CV00487MCEACPS,

3    2017 WL 2972263 (E.D. Cal. July 12, 2017)(emphasis added), citing *Chick Kam Choo v.*

4    *Exxon Corp.,* 486 U.S. 140, 145–46, 108 S. Ct. 1684, 1689, 100 L. Ed. 2d 127 (1988).

5            BOFI's remedy, should it prevail and establish damages, would be limited to monetary

6    relief. It is not entitled to a declaratory judgment vacating the state court order, and thus the

7    claim for a declaratory judgment should be dismissed.

8                                   **CONCLUSION**

9            Ms. Venzant canceled the BOFI Agreement months before entering into a new

10    transaction with Advance Funding, and her decision was not based on any interference or

11    urging from the Defendants.

12           No genuine issues of material fact exist and Defendants are entitled to judgment

13    dismissing the Complaint.

14           DATED this 20th day of September, 2018.

15                                   RYAN, SWANSON & CLEVELAND, PLLC

16                                   By */s/ Susan Rae Fox*

17                                       Susan Rae Fox, WSBA #15278
                                         Attorneys for Defendants

18                                   1201 Third Avenue, Suite 3400
19                                   Seattle, Washington  98101-3034
                                     Telephone: (206) 464-4224
20                                   Facsimile: (206) 583-0359
                                     fox@ryanlaw.com

21

22

23

24

25

26

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 16
Cause No. 2:14cv-00484-BJR

RS   Ryan, Swanson & Cleveland, PLLC
     1201 Third Avenue, Suite 3400
     Seattle, WA 98101-3034
     206.464.4224  |  Fax 206.583.0359

1

## CERTIFICATE OF SERVICE

2      I hereby certify under penalty of perjury under the laws of the State of Washington

3  that on September 20, 2018, I electronically filed the foregoing document with the Clerk of

4  the Court using the CM/ECF system, and caused a copy of the foregoing document to be sent

5  via electronic and U.S. Mail to the following attorneys of record:

6

7      James P. Savitt, WSBA #16847
       Duncan E. Manville, WSBA #30304
8      SAVITT BRUCE & WILLEY LLP
       1425 Fourth Avenue, Suite 800
9      Seattle, Washington  98101-2272
       Telephone: (206) 749-0500
10     Facsimile: (206) 749-0600
       *jsavitt@sbwllp.com*
11     *dmanville@sbwllp.com*

12  Attorneys for Plaintiff BofI Federal Bank

13  DATED this 20th day of September, 2018.

14
                                        */s/ Susan Rae Fox*_____
15                                      Susan Rae Fox, WSBA #15278
                                        Attorneys for Defendants
16
                                        1201 Third Avenue, Suite 3400
17                                      Seattle, Washington  98101-3034
                                        Telephone: (206) 464-4224
18                                      Facsimile: (206) 583-0359
                                        *fox@ryanlaw.com*

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 17
Cause No. 2:14cv-00484-BJR



Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1698521.01

1
2
3
4
5
6
7

The Honorable Barbara J. Rothstein

8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10
11
12
13
14
15
16

BOFI FEDERAL BANK, a federally chartered
banking institution,

                                        Plaintiff,

           v.

ADVANCE FUNDING LLC; KIRK A. TOVEY,
individually and as trustee of the KIRK A. TOVEY
REVOCABLE TRUST; and SETTLEMENT
COLLECTION SERVICE, LLC,

                                        Defendants.

NO. 2:14-cv-00484-BJR

**[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OF
DISMISSAL**

17
18
19

        THIS MATTER came before this Court on the Defendants' Motion for Summary Judgment of Dismissal.  The Court has considered the Motion for Summary Judgment, the Declaration of Susan Rae Fox, and the Declaration of Richard E. Miller III, and it is hereby

20
21

        ORDERED that Defendants' Motion for Summary Judgment for Dismissal is GRANTED and the Complaint is DISMISSED effective upon entry of this order.

22

        DATED this _____ day of October, 2018.

23

                                        _____
                                        JUDGE BARBARA J. ROTHSTEIN
                                        UNITED STATES DISTRICT JUDGE

24
25
26

ORDER GRANTING
MOTION FOR SUMMARY JUDGMENT - 1
14-CV-00484-BJR

1762146.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1    Presented by:

2    _____

3    Susan Rae Fox, WSBA #15278
     Attorneys for Defendants
4    RYAN, SWANSON & CLEVELAND, PLLC
     1201 Third Avenue, Suite 3400
5    Seattle, Washington  98101-3034
     Telephone: (206) 464-4224
6    Facsimile: (206) 583-0359
     *fox@ryanlaw.com*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING
MOTION FOR SUMMARY JUDGMENT - 2
14-CV-00484-BJR

1762146.01



Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359