The Honorable Barbara J. Rothstein
Note on Motion Calendar: Friday, October 12, 2018

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

BOFI FEDERAL BANK, a federally chartered banking institution,

     Plaintiff,

     v.

ADVANCE LLC; KIRK A TOVEY, individually and as trustee of the KIRK A TOVEY REVOCABLE TRUST; and SETTLEMENT COLLECTION SERVICE, LLC,

     Defendants.

NO.    2:14-CV-00484-BJR

**PLAINTIFF BOFI FEDERAL BANK'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF DISMISSAL**

**ORAL ARGUMENT REQUESTED**

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF DISMISSAL
No. 2:14-CV-00484-BJR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

## **TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................... 1

II. STATEMENT OF FACTS ...................................................................................... 1

    A. THE BOFI AGREEMENT ............................................................................ 1

    B. THE LIFE INSURANCE POLICY ............................................................. 2

    C. BOFI'S CASH ADVANCES TO MS. VENZANT. ...................................... 3

    D. DEFENDANTS' INTERFERENCE WITH THE BOFI AGREEMENT. ......... 4

        1. Advance's Communications with Ms. Venzant. ................................... 4

        2. Defendants' Knowledge of the BofI Agreement. ............................... 4

        3. Defendants' Failure to Contact BofI. ................................................ 6

        4. Ms. Venzant's Transaction with Defendants. ..................................... 6

        5. Transfer of the Life Insurance Policy. ............................................... 7

        6. BofI's Discovery of Defendants' Interference. .................................. 8

III. ARGUMENT ........................................................................................................ 8

    A. THE SUMMARY JUDGMENT STANDARD. ............................................. 8

    B. THE COURT SHOULD DENY SCS AND TOVEY'S MOTION FOR SUMMARY JUDGMENT AS TO ADVANCE BECAUSE ADVANCE IS UNREPRESENTED AND ALREADY IN DEFAULT. ............................... 9

    C. TOVEY IS CHARGEABLE WITH KNOWLEDGE POSSESSED BY ITS AGENTS, SCS AND MS SCHWARTZ, AND IS ALSO VICARIOUSLY LIABLE FOR SCS'S CONDUCT. .................................... 10

    D. SCS AND TOVEY ARE NOT ENTITLED TO SUMMARY JUDGMENT ON BOFI'S TORTIOUS-INTERFERENCE CLAIM .............. 11

        1. Elements of the Claim. ..................................................................... 11

        2. SCS and Tovey Had Knowledge of the BofI Agreement. .................... 11

        3. SCS and Tovey Interfered with the BofI Agreement. ......................... 13

    E. SCS AND TOVEY ARE NOT ENTITLED TO SUMMARY JUDGMENT ON BOFI'S UNJUST-ENRICHMENT CLAIM. ..................... 15

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - i
No. 2:14-CV-00484-BJR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1          1.      Elements of the Claim. ................................................................ 15

2          2.      BofI's Unjust-Enrichment Claim Is Not "Predicated on a Finding
                   of Tortious Interference." ........................................................... 16
3

4          3.      SCS and Tovey Obtained a Valuable Benefit at BofI's Expense......... 16

5          4.      The Record Supports an Inference that SCS and Tovey Engaged in
                   Wrongful and Unjust Acts................................................................ 17
6
      F.    SCS AND TOVEY ARE NOT ENTITLED TO SUMMARY
7           JUDGMENT ON BOFI'S DECLARATORY-JUDGMENT CLAIM............. 19

8   IV.     CONCLUSION ........................................................................................ 20

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - ii
No. 2:14-CV-00484-BJR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

# I.     INTRODUCTION

Defendants Settlement Collection Service, LLC ("SCS") and Kirk A. Tovey, individually and as trustee of the Kirk A. Tovey Revocable Trust ("Tovey"), seek summary judgment on all claims asserted against them by Plaintiff BofI Federal Bank ("BofI").[1] Although their Motion for Summary Judgment of Dismissal ("Motion") purports to have been filed on behalf of all Defendants, that is not possible, since Defendant Advance Funding LLC ("Advance") is unrepresented by counsel and was defaulted almost two months ago.  (Dkts. 102, 104.)

The Court should deny SCS and Tovey's motion for summary judgment on BofI's claim for tortious interference, because issues of material fact preclude summary judgment on that claim.  The Court should deny SCS and Tovey's motion for summary judgment on BofI's claim for declaratory judgment, because the *Rooker-Feldman* doctrine, which SCS and Tovey contend bars the claim, is inapplicable.  And the Court should *sua sponte* enter summary judgment *for BofI* on its unjust-enrichment claim, because there is no dispute that SCS and Tovey enriched themselves at BofI's expense and it would be inequitable for them to retain the benefit that they improperly obtained.

# II.     STATEMENT OF FACTS

## A.     THE BOFI AGREEMENT.

On November 16, 2011, Sheena Venzant won the Washington State "Lucky for Life" lottery drawing.  (Dkt. 30, ¶ 2.)  As a "Lucky for Life" winner, she had the option of receiving her prize in a single lump-sum payment of $750,000, or in annual installments of $52,000 for the rest of her life.  (Dkt. 39; Dkt. 30, ¶ 2.)  She opted for installments.  (*Id.*)

Ms. Venzant then spoke with McLloyd Onwubere, at the time a BofI employee, about assigning to BofI some of her lottery installments in exchange for a lump-sum payment.  (Dkt. 30, ¶ 3.)  BofI and Ms. Venzant thereafter entered into a Lottery Payment Assignment

---

[1] BofI Federal Bank changed its name to Axos Bank effective October 1, 2018.

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - 1
No. 2:14-CV-00484-BJR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

Agreement and a Life Contingent Payment Addendum, both effective as of March 7, 2012. (Dkt. 39, Exs. C, D [collectively, the "BofI Agreement"].)

Under the BofI Agreement, Ms. Venzant agreed to assign to BofI twenty-five annual installment payments of $47,000 each, allowing her to retain the remaining amount each year. (Dkt. 39, Ex. D, Terms Rider.)  BofI agreed to purchase those payments for $318,401.75.  (*Id.*)

The BofI Agreement imposed on BofI and Ms. Venzant a number of obligations. BofI's right to receive the installment payments referenced in the BofI Agreement (the "Assigned Payments") was subject to the condition precedent of the Thurston County Superior Court issuing an order approving the assignment pursuant to RCW 67.70.100.  (Dkt. 39, Ex. C ¶ C.3.)  But other obligations were effective immediately.  For example, Ms. Venzant granted to BofI a present security interest in the Assigned Payments.  (Dkt. 39, Ex. C ¶ C.7.)  She also agreed to cooperate with BofI in obtaining the court order (Dkt. 39, Ex. C ¶ C.3); to execute and deliver such other documents as might be necessary to effectuate the terms and conditions of the BofI Agreement (Dkt. 39, Ex. C ¶ C.11); to notify BofI of any delay in performance or changes to the Assigned Payments (*id.*); to refrain from "accept[ing] or entertain[ing] any offer from a third party to purchase any portion of the Prize if, in [BofI]'s reasonable opinion, the acceptance or entertainment of such offer would likely interfere with or delay the assignment of the Assigned Payments as contemplated by this Agreement" (*id.*); and to obtain a life insurance policy that would prevent BofI's investment from being speculative (Dkt. 39, Ex. D ¶ B.3).

On March 9, 2012 and March 14, 2012, pursuant to Article 9 of the Washington Uniform Commercial Code, BofI filed a UCC Financing Statement and UCC Financing Statement Amendment, providing public notice of the BofI Agreement.  (Dkt. 39, Exs. G, H.)

**B.      THE LIFE INSURANCE POLICY.**

Because Ms. Venzant would only receive lottery installments during her lifetime, the BofI Agreement provided that a life insurance policy would be obtained to pay benefits to BofI

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - 2
No. 2:14-CV-00484-BJR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1  should she die prematurely.  (Dkt. 39, ¶ 10, Ex. D ¶ B.3.)[2]  Ms. Venzant applied for the policy,

2  and obtained it with BofI's assistance.  (Dkt. 39, ¶¶ 10-11, Ex. D ¶ B.3, Ex. I.)  The BofI

3  Agreement stated that the policy would be at BofI's expense, and BofI duly paid the first

4  premium.  (Dkt. 39, ¶ 11, Ex. D. ¶ B.3.)

5          The policy included a contestability period and a suicide exclusion, both running for

6  two years from the policy's date of issuance; in other words, the policy would not be fully

7  effective for a two-year period.  (Dkt. 39, Ex. I at 9.)  BofI had to wait until the end of this

8  period before paying Ms. Venzant the lump-sum amount.  (Dkt. 39, ¶ 12.)  With Ms. Venzant's

9  knowledge and consent, BofI held off on obtaining a court order pursuant to RCW 67.70.100

10  pending expiration of the contestability period and suicide exclusion.  (Dkt. 39, ¶¶ 3, 12, Exs.

11  B, J, K.)

12          Ms. Venzant asserted in a previously-filed declaration that "[a]t no time in the process

13  [did she] agree[ ] to delay or defer receiving the lump sum payment."  (Dkt. 30, ¶ 5.)  But the

14  contemporaneous evidence belies that assertion.  BofI's Specialty Finance Division requires its

15  employees to keep real-time notes of their communications with customers.  (Dkt. 39, ¶ 3.)

16  Notes of communications with Ms. Venzant establish that she was aware of, and agreed to the

17  two-year contestability period and resulting payment delay.  (Dkt. 39, Ex. B.)

18  Contemporaneous correspondence also confirms Ms. Venzant's acknowledgement and

19  acceptance of the two-year waiting period.  (Dkt. 39, Exs. J, K.)

20  **C.      BOFI'S CASH ADVANCES TO MS. VENZANT.**

21          Before and during the contestability period, Ms. Venzant asked BofI to advance her

22  certain funds while she waited for her lump-sum payment.  (Dkt. 39 ¶ 16, Ex. B.)  These

23  requests also demonstrate Ms. Venzant's knowledge and acceptance of the two-year waiting

24  period, and her receipt of additional consideration in exchange for agreeing to the delay.  Ms.

25  _____

26  [2] The BofI Agreement was modified after its initial execution because BofI first believed that Ms.
Venzant had won a guaranteed number of annual installment payments, but later learned that Ms.

27  Venzant had actually won a life-contingent prize, which presented higher risks and required BofI to
purchase a life insurance policy for Ms. Venzant at its own expense.  (Dkt. 39, ¶ 13.)

Venzant asked for advances on several occasions, and in reliance on its agreement with her, BofI provided her with advances totaling more than $15,000.  (*Id.*)

## D.  DEFENDANTS' INTERFERENCE WITH THE BOFI AGREEMENT.

### 1.  Advance's Communications with Ms. Venzant.

According to Advance, in April 2013, Barbara Guerra, a salesperson employed by Advance, left Ms. Venzant "a detailed voicemail message" about entering into an assignment agreement with her company.  (Dkt. 71, Ex. A [AF's answer to Rog 5]; Ex. B 22:22 – 23:15, 25:21 – 26:16, 105:25 – 106:19.)  Although Ms. Venzant suggested in her declaration that she initiated contact with Ms. Guerra in the spring of 2013 (Dkt. 30, ¶ 8), that is disputed: Advance's answer to BofI's Interrogatory No. 5 affirmatively states that Ms. Guerra called Ms. Venzant first.  (Dkt. 71, Ex. A [AF's answer to Rog 5].)

### 2.  Defendants' Knowledge of the BofI Agreement.

Advance has admitted that it was aware of the BofI Agreement at the time of Ms. Guerra's communications with Ms. Venzant.  (Dkt. 31, ¶ 3; Dkt. 71, 37:3-21, 40:4-10, 22:14-21.)  Ms. Venzant claimed in her declaration that she sent BofI a letter in February 2013 purporting to cancel the BofI Agreement (although, as we discuss below, Washington law does not authorize this sort of unilateral cancellation), and SCS and Tovey now assert that Ms. Venzant told Ms. Guerra sometime "[d]uring the negotiations" that she had done so.  (Dkt. 30, ¶¶ 6-7, Ex. C; Dkt. 71, 37:3-21; Motion 6:12-14.)  However, there is no contemporaneous supporting evidence that the letter was ever sent, and the documentary record does not substantiate SCS and Tovey's contentions about what Ms. Venzant told Ms. Guerra or when.

First, it is undisputed that BofI never received the purported letter (or learned from Mr. Onwubere that Ms. Venzant had discussed with him the possibility of canceling the BofI Agreement).  (Dkt. 39, ¶ 18, Exs. B, L.)

Second, for months after the alleged letter's supposed date (February 5, 2013), Ms. Venzant maintained her relationship with BofI unchanged.  For example:

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF DISMISSAL - 4
No. 2:14-CV-00484-BJR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

- On February 19, 2013, she sent Mr. Onwubere (who by that time had been terminated by BofI, Dkt. 39, ¶ 17) and BofI employee Chris Husong an email message stating in part, "*I just think things will be better if I continue to keep things the way they are now*.. [sic]  Looking forward to hearing from you.  Thanks."

- On April 3, 2013, she requested a cash advance.

- On April 29, 2013, she again requested a cash advance.

- On May 3, 2013, she sent Mr. Husong an email message stating, "Thanks for finally calling me back. .sorry working so couldn't answer my phone but I will call you at noon. .Thank you."

(Dkt. 39, Ex. B, emphasis added; Dkt. 71, Ex. C)  Thus, Ms. Venzant continued to behave and communicate with BofI as if the BofI Agreement were still in place, and BofI continued to act in reliance on the BofI Agreement.  (*Id.*; *see also* Dkt. 39, Ex. L.)

Third, documents that Advance produced in discovery indicate that Advance knew Ms. Venzant had not cancelled the BofI Agreement, and actively assisted her in attempting to extricate herself from her deal with BofI.  For example, on May 13, 2013, Monica Ray, an employee of Northeastern Funding, LLC, the company that secured funding for Defendants' deal with Ms. Venzant, stated in an email message, "I could use the contract itself [referring to the BofI Agreement], to see if they stated there would be a two year delay.  *If they did not, that could be grounds for her to cancel*."  (Dkt. 82, Ex. A, emphasis added.)  And on June 28, 2013, Ms. Ray stated in an email message to Amy Schwartz, counsel for both SCS and Tovey (Declaration of Duncan E. Manville in Opposition to Defendants' Motion for Summary Judgment of Dismissal ["Manville Decl."], Ex. A 14:4-17; Ex. B 8:24 – 9:6) that Ms. Venzant "intended to send a formal cancellation letter" to BofI (indicating that she had not already done so), and that Ms. Ray would "secure a copy of said letter."  (Dkt. 71, Ex. B, AF Dep. Ex. 3.)[3]

---

[3] Ms. Ray testified at deposition that what she meant by this statement was that as of June 28, 2013 she had only seen an *unsigned* version of the letter and planned to obtain a signed version from Ms. Venzant.  (Dkt. 71, 35:14 – 36:10, 110:7-23, 113:14-25.)  Aside from being at odds with the plain language of Ms. Ray's email message, this testimony was undermined by Advance's failure to produce the purported unsigned letter in discovery or even reveal its existence until late in discovery, and Advance's contention that the alleged unsigned letter had been discarded.  (Dkt. 71, Ex. B 36:11-16, 112:15-24.)

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

### 3.    Defendants' Failure to Contact BofI.

Defendants did not contact BofI to test the accuracy of any of Ms. Venzant's alleged assertions to Ms. Guerra.  (Dkt. 71, Ex. B 40:14-25, Ex. A [AF's answers to Rogs 4, 6]; Dkt. 39 ¶¶ 20-21.)  This despite the fact that the UCC financing statements that BofI had previously filed were still in place and Advance was aware of BofI's security interest in Ms. Venzant's winnings.  (Dkt. 71, Ex. B 40:4-10, 22:14-21.)  Advance previously admitted that it did not contact BofI because it did not want to "induce poaching."  (Dkt. 71, Ex. B 40:14-25.)  In other words, Advance kept BofI in the dark because it was afraid BofI would take steps to retain Ms. Venzant as a customer – *to her benefit* and Defendants' detriment.  (*Id.*)

### 4.    Ms. Venzant's Transaction with Defendants.

According to Advance, and unbeknownst to BofI, on May 21, 2013 Advance entered into a contract with Ms. Venzant (effective May 17, 2013) pertaining to essentially the same lottery installment payments that had been the subject of the BofI Agreement (the "AF Agreement").  (Dkt. 31, ¶ 3; Dkt. 71, Ex. A [AF's answer to Rog 5]; Dkt. 40, Ex. A.)

Advance generally relies on outside funders to "complete" its lottery transactions.  (Dkt. 73, ¶¶ 4-5.)  It did so in this case.  On May 21, 2013 – the same day the AF Agreement was signed – Ms. Ray emailed Richard E. Miller III of SCS, and offered SCS an opportunity to bid on the "Washington lottery stream" that was the subject of the AF Agreement.  (Dkt. 71, Ex. B, AF Dep. Ex. 2.)  The next day, SCS submitted a bid on behalf of its client, Tovey, and Advance accepted it.  (*Id.*; Manville Decl., Ex. A 51:4-24.)  On June 3, 2013, Advance petitioned the Thurston County Superior Court for an order approving Ms. Venzant's assignment of lottery installments to Tovey.  (Dkt. 40, Ex. B.)  Advance failed to give BofI notice of its petition, or advise the superior court of the BofI Agreement, or make BofI a party to the proceeding in accordance with Washington Superior Court Civil Rule 19.  (Dkt. 39 ¶ 21; Dkt. 4, Ex. B.)  The Thurston County Superior Court issued the requested order on June 14, 2013.  (Dkt. 71, Ex. D.)

On June 28, 2013, Ms. Ray emailed Ms. Schwartz a "closing binder" including a number of documents concerning the AF Agreement and the Venzant transaction.  (Dkt. 71,

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - 6
No. 2:14-CV-00484-BJR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

Ex. B, AF Dep. Ex. 12.)  Among these documents were the UCC statements that BofI had filed in March 2012 in an effort to protect its investment in Ms. Venzant's lottery payments. (Manville Decl., Ex. A 10:15 – 11:2, 12:2 – 14:17, 40:10 – 41:15.)  Ms. Schwartz reviewed the UCC statements and asked Ms. Ray about them.  (Dkt. 71, Ex. B, AF Dep. Ex. 3 at 5.)  Ms. Ray responded that BofI had previously entered into a contract with Ms. Venzant but had been "unable to secure court approval," and that Ms. Venzant "intended to send a formal cancellation letter" to BofI.  (*Id.*)  In other words, Ms. Ray told Ms. Schwartz that BofI had a lottery assignment agreement with Ms. Venzant *that was still in place*.  (*Id.*)  Ms. Schwartz requested a copy of the cancellation letter and a minute entry denying BofI's application for court approval of Ms. Venzant's assignment of her lottery installments to BofI.  (*Id.*)  Ms. Ray responded that Advance had checked Washington's court records and "no prior application was ever filed."  (*Id.*)  Advance provided SCS with a copy of Ms. Venzant's purported cancellation letter on July 2, 2013.  (*Id.*)

Defendants closed their deal with Ms. Venzant in July 2013.  (Miller Decl., ¶ 9.)  Ms. Venzant assigned a portion of her lottery installments to Tovey in exchange for a lump-sum payment of $300,000.  (Dkt. 40, Exs. A, B.)  It is undisputed that SCS brokered the deal between Advance and Tovey.  (Dkt. 71, Ex. H [SCS's answer to Rog 2], Ex. B, AF Dep. Ex. 2.)  It is also undisputed that the AF Agreement was less favorable to Ms. Venzant than the BofI Agreement.  (*Compare* Dkt. 39, Ex. 4 *with* Dkt. 40, Ex. A, Venzant Ex. 2.)[4]

### 5.  Transfer of the Life Insurance Policy.

When Advance and Ms. Venzant executed the AF Agreement, Defendants did not know about the life insurance policy that Ms. Venzant had previously procured with BofI's assistance.  (Dkt. 71, Ex. B 122:11-23, 163:24 – 137:8, AF Dep. Ex. 2.)  They learned about the policy later, after Ms. Venzant's application for a second policy had been denied based on an insurer's review of her medical records.  (*Id.  See also* Dkt. 71, Ex. G.)  Thereafter, Advance

---

[4] The BofI Agreement included a discount rate of 14 percent.  (Dkt. 39, Ex. F.)  Advance gave Ms. Venzant a 15.956 percent rate.  (Dkt. 40, Ex. A, Venzant Ex. 2.)  A higher rate is worse for the lottery winner.  *In re Stone Street Capital, LLC*, 30 Mass. L. Rptr. 493 (Mass. Super. Ct. 2012).

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF DISMISSAL - 7
No. 2:14-CV-00484-BJR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1   and SCS arranged for Ms. Venzant to transfer ownership of her existing policy to SCS.  (Dkt.

2   71, Ex. H [SCS's answer to Rog 8], Ex. I; Dkt. 79, Ex. B.)  Ms. Venzant made SCS the policy's

3   owner and beneficiary even though the BofI Agreement required BofI to be the owner of the

4   policy.  (Dkt. 39, ¶¶ 11, 22, Ex. D ¶ B.3.)

5         **6.**     **BofI's Discovery of Defendants' Interference.**

6         BofI did not learn about issues with the BofI Agreement until February 2014.  (Dkt. 39,

7   ¶ 22.)  By then the contestability period and suicide exclusion in Ms. Venzant's life insurance

8   policy were almost up, and BofI expected to obtain an order pursuant to RCW 67.70.100 and

9   make the lump-sum payment to Ms. Venzant in accordance with the BofI Agreement.  (*Id.*)

10  When BofI contacted the Washington Lottery to verify processing information for Ms.

11  Venzant, it was told that she had assigned her lottery installments to another entity.  (*Id.*)  At

12  about the same time, BofI learned that she had also assigned her life insurance policy to SCS.

13  (*Id.*)  BofI was unable to obtain the court order required by RCW 67.70.100 for one reason

14  only: because Ms. Venzant had assigned to Advance's assignee, Tovey, essentially the same

15  payments that were already the subject of the BofI Agreement.  (Dkt. 39, ¶ 24.  *See also* Dkt.

16  40, Exs. A, B; Dkt. 71, D.)

17                **III.**     **ARGUMENT**

18  **A.**    **THE SUMMARY JUDGMENT STANDARD.**

19        Summary judgment is only appropriate if "there is no genuine issue as to any material

20  fact and ... the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);

21  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202

22  (1986).

23        The Court draws all reasonable inferences in favor of the non-moving party and views

24  the evidence in the light most favorable to the non-moving party.  *Southland Sod Farms v.*

25  *Stover Seed Co.*, 108 F.3d 1134, 1138 (9th Cir. 1996); *T. W. Elec. Serv., Inc. v. Pacific Elec.*

26  *Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1986).  If the nonmoving party produces

27  evidence that contradicts evidence produced by the moving party, its truth is assumed.  *T. W.*

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - 8
No. 2:14-CV-00484-BJR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1  *Elec. Service*, 809 F.2d at 631. " '[C]redibility determinations, the weighing of the evidence,

2  and the drawing of legitimate inferences from the facts are jury functions, not those of a

3  judge.' " *Berry v. Baca*, 379 F.3d 764, 769 (9th Cir. 2004), *quoting Anderson,* 477 U.S. at 255.

4  It is well-established that even in the absence of a formal cross-motion for summary

5  judgment, "the Court has authority to grant summary judgment in favor of the nonmoving party

6  'after giving notice and a reasonable time to respond.' " *Steele v. Panos Props., LLC*, No. C17-

7  0525-JCC, 2017 WL 2600168, at *3 (W.D. Wash. June 15, 2017).  *Accord Cool Fuel, Inc. v.*

8  *Connett*, 685 F.2d 309, 311 (9th Cir. 1982) ("if one party moves for summary judgment and, at

9  the hearing, it is made to appear from all the records, files, affidavits and documents presented

10  that there is no genuine dispute respecting a material fact essential to the proof of movant's

11  case and that the case cannot be proved if a trial should be held, the court may *sua sponte* grant

12  summary judgment to the non-moving party"); *Providence Health & Servs.-Wash. v. Benson*,

13  No. C09-1668TSZ, 2011 WL 62138, at *1 (W.D. Wash. Jan. 7, 2011).

14  **B.   THE COURT SHOULD DENY SCS AND TOVEY'S MOTION FOR SUMMARY**
     **JUDGMENT AS TO ADVANCE BECAUSE ADVANCE IS UNREPRESENTED**
15  **AND ALREADY IN DEFAULT.**

16  The Motion is styled "Defendants' Motion for Summary Judgment of Dismissal."

17  (Motion 1:12-13.)  It was filed by counsel purporting to represent all Defendants, and it

18  purports to seek summary judgment on behalf of all Defendants.  (*Id.* at 16:17-18, 1:19.)  Yet

19  defense counsel previously withdrew from representing Advance (Dkts. 93-95, 98), and the

20  Court entered a default order against Advance almost two months ago (Dkts. 102, 104).

21  Because Advance is unrepresented and has been defaulted and cannot have joined in the

22  Motion, we do not specifically discuss BofI's claims against Advance in this opposition brief.

23  BofI intends to move for a default judgment against Advance.  In the meantime, the Court

24  should deny the Motion to the extent it purports to seek summary judgment in Advance's favor.

25

26

27

**C.      TOVEY IS CHARGEABLE WITH KNOWLEDGE POSSESSED BY ITS AGENTS, SCS AND MS SCHWARTZ, AND IS ALSO VICARIOUSLY LIABLE FOR SCS'S CONDUCT.**

"An agency relationship exists where the principal consents to the agent's actions on the principal's behalf." *Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Group, Inc.*, 114 Wn. App. 151, 159, 52 P.3d 30, 34 (2002).  *Accord ITT Rayonier, Inc. v. Puget Sound Freight Lines*, 44 Wn. App. 368, 377, 722 P.2d 1310, 1316 (1986) ("An agency relationship exists when one agrees to act for another under the latter's direction and control.").  Whether an agency relationship exists is usually a question of fact.  *ITT Rayonier*, 44 Wn. App. at 377, 722 P.2d at 1316.

Here, the record establishes that Tovey controlled the actions of SCS.  As Richard E. Miller III of SCS stated in his declaration filed in support of SCS and Tovey's Motion, "SCS acts as a broker or facilitator between the factoring company [Advance] and the investor [Tovey]."  (Miller Decl. ¶ 4.)  During discovery, Tovey designated Mr. Miller as its Fed. R. Civ. P. 30(b)(6) representative.  (Manville Decl., Ex. B 3:12-20.)  In that capacity, Mr. Miller confirmed that that Tovey, not SCS, decides which lottery deals to fund – as it did in this case.  (*Id.* at 5:15 – 6:2, 7:8 – 8:2.)  The record also establishes that Ms. Schwartz acted as counsel for both SCS and Tovey.  (Manville Decl., Ex. A 14:4-17; Ex. B 8:24 – 9:6.)

In general, "[t]he law imputes to the principal, and charges him with, all notice or knowledge relating to the subject-matter of the agency which the agent acquires or obtains while acting as such agent and within the scope of his authority." *American Fidelity & Cas. Co. v. Backstrom*, 47 Wn.2d 77, 82, 287 P.2d 124, 127 (1955) (citation and internal quotation marks omitted).  Any knowledge possessed by SCS or Ms. Schwartz about the BofI Agreement and Ms. Venzant's transaction with Advance is therefore chargeable to Tovey.

In addition, "[a] principal is liable for the acts of his or her agent committed while the agent is acting within the scope of the agency." *Newton Ins. Agency*, 114 Wn. App. at 159, 52 P.3d at 34.  SCS was plainly acting within the scope of its agency here.  Thus, if SCS is liable

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - 10
No. 2:14-CV-00484-BJR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

to BofI for tortious interference or unjust enrichment, Tovey is vicariously liable for SCS's misconduct.  *Id.*

**D.   SCS AND TOVEY ARE NOT ENTITLED TO SUMMARY JUDGMENT ON BOFI'S TORTIOUS-INTERFERENCE CLAIM.**

**1.   Elements of the Claim.**

In order to maintain a claim against SCS and Tovey for tortious interference with contract, BofI must establish the existence of a valid contract with Ms. Venzant; that SCS and Tovey had knowledge of the contract, intentionally interfered with it causing its breach, and interfered with it for an improper purpose or by improper means; and resultant damages. *Sintra, Inc. v. City of Seattle*, 119 Wn.2d 1, 28, 829 P.2d 765, 780 (1992).  Although "reserve[ing] the right to challenge each and every element of the claim," on summary judgment SCS and Tovey challenge only the claim's knowledge and inducement elements: They assert that "Plaintiff has not and cannot establish that the Defendants had prior knowledge of the BOFI Agreement or that they induced Ms. Venzant to cancel the arrangement."  (Motion 10:18-20.)  In the paragraphs below, we address SCS and Tovey's arguments relating to these claim elements.

**2.   SCS and Tovey Had Knowledge of the BofI Agreement.**

To prove the knowledge element of its tortious-interference claim, BofI need not show specific knowledge – only an awareness of the existence of some kind of business relationship between it and Ms. Venzant.  *Woods View II, LLC v. Kitsap County*, 188 Wn. App. 1, 30, 352 P.3d 807, 822 (2015), *citing Topline Equip., Inc. v. Stan Witty Land, Inc*. 31 Wn. App 86, 93, 639 P.2d. 825, 830 (1982); *Calbom v. Knudtzon*, 65 Wn.2d 157, 165, 396 P.2d 148, 153 (1964). Moreover, as the Washington Court of Appeals held in *Topline Equip.*, "it is not necessary that the interferor understand the precise legal nature of the relationship."  31 Wn. App. at 93, 639 P.2d at 830.  The Court continued,

> Although knowledge of the existence of the business relationship in issue is an essential element in establishing liability for interference therewith, it is sufficient if the evidence reveals that the alleged interferor had knowledge of facts giving

rise to the existence of the relationship.  It is not necessary that the interferor understand the legal significance of such facts.

(*Id.*)

The record demonstrates that SCS and Ms. Schwartz (and thus Tovey) had knowledge of the business relationship between BofI and Ms. Venzant before Tovey provided the funding that allowed Defendants to complete their deal with Ms. Venzant.  SCS and Tovey assert that they learned Ms. Venzant's name for the first time when they received a closing binder from Advance before the deal closed.  (Motion 7:12-16.)  They neglect to mention that the closing binder contained the UCC financing statements that BofI had filed in 2012.  (Manville Decl., Ex. A 10:15 – 11:2, 12:2 – 14:17, 40:10 – 41:15.)  When SCS asked Advance about the UCC statements, it was told that BofI had previously entered into a contract with Ms. Venzant but had been "unable to secure court approval," and that Ms. Venzant "intended to send a formal cancellation letter" to BofI.  (Dkt. 71, Ex. B, AF Dep. Ex. 3 at 5.)  In other words, it was told that the BofI Agreement was still in place.  (*Id.*)  Advance subsequently advised SCS that Washington's court files contained no record of the filing of a petition for an order approving Ms. Venzant's assignment of her lottery payments to BofI.  (*Id.*)  Defendants did not close their deal with Ms. Venzant until after this exchange.  (Miller Decl, ¶ 9.)

Despite having knowledge of the BofI Agreement and BofI's UCC filings, SCS and Tovey decided to fund the Venzant deal.  They may have believed that BofI had not obtained a court order approving Ms. Venzant's assignment of her lottery installments to BofI and that Ms. Venzant had purported to cancel the BofI Agreement.  As the Ninth Circuit Court of Appeals held in this case, however, whether BofI obtained a court order was irrelevant to the question of whether a valid contract existed between BofI and Ms. Venzant.  And as discussed above, the BofI Agreement was not subject to unilateral cancellation by Ms. Venzant.  In sum, it is clear that SCS and Tovey had knowledge of facts demonstrating the existence of a contractual relationship between BofI and Ms. Venzant at the time Defendants closed their deal

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF DISMISSAL - 12
No. 2:14-CV-00484-BJR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1   with Ms. Venzant.  That SCS and Tovey may not have appreciated the legal significance of

2   those facts is immaterial.  *See Topline Equip.*, 31 Wn. App. at 93, 639 P.2d at 830.

### 3.   SCS and Tovey Interfered with the BofI Agreement.

4   To prove that SCS and Tovey interfered with the BofI Agreement, BofI need only show

5   that their actions were a "moving cause" of Ms. Venzant's breach of the BofI Agreement.

6   *Scymanski v. Dufault*, 80 Wn.2d 77, 86, 491 P.2d 1050, 1056 (1972); *Valley Land Office, Inc.*

7   *v. O'Grady*, 72 Wn.2d 247, 258, 432 P.2d 850, 856-57 (1967).

8   In *Szymanski*, the trial court held after a bench trial that one of the defendants, the

9   Washington State Hop Producers, had interfered with a prospective business transaction

10   between one of its members and a non-member by purporting to add an improper condition to

11   the transaction.  *Id.* at 85-86.  The trial court concluded that this action had delayed the

12   transaction and ultimately contributed to its failure.  *Id.* at 86.  The Washington Supreme Court

13   held that if the interference alleged by the plaintiff "was the moving cause of the termination,

14   … then the interference [was] actionable." *Id.*  The Supreme Court concluded that "[t]he

15   record support[ed] the trial court's conclusion that absent the invalid condition imposed by the

16   co-op, the sale to plaintiff would have been completed." *Id.*

17   Conversely, in *Valley Land Office*, the Supreme Court reversed the trial court's

18   dismissal of the plaintiff's tortious-interference claim at the close of the plaintiff's case at trial.

19   72 Wn.2d at 248, 258.  The contract that had allegedly been interfered with was an commission

20   agreement between the plaintiff and a farmer.  *Id.* at 250.  The only relevant evidence presented

21   at trial was the farmer's testimony that before his communications with the defendant he had

22   already determined in his own mind that he had made a bad deal and was going to see a lawyer.

23   *Id.* at 258.  Under these circumstances, the Supreme Court agreed with the trial court that the

24   defendants could not have induced the farmer's breach.  (*Id.*)

25   Here, as in *Syzmanski* and unlike in *Valley Land Office*, the record supports a reasonable

26   inference that Ms. Venzant would not have repudiated the BofI Agreement but for Defendants'

27   interference.  Although Ms. Venzant stated in a declaration that she decided to cancel the BofI

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - 13
No. 2:14-CV-00484-BJR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

Agreement (even though she had no right to do so) and sent BofI a purported cancellation notice before she reached out to Advance (Dkt. 30, ¶¶ 6-7, Ex. C; Dkt. 71, 37:3-21), the record indicates otherwise:

- There is no supporting evidence that Ms. Venzant ever sent a cancellation notice to BofI, and it is undisputed that BofI never received any such notice from Ms. Venzant.  (Dkt. 39, ¶ 18, Exs. B, L.)

- Advance stated in its answer to BofI's Interrogatory No. 5 that its salesperson, Ms. Guerra, initiated contact with Ms. Venzant.  (Dkt. 71, Ex. A [AF's answer to Rog 5].)

- For months after the supposed date of Ms. Venzant's purported cancellation notice to BofI (February 5, 2013), Ms. Venzant continued to behave and communicate with BofI as if the BofI Agreement were still in place, and BofI continued to act in reliance on the BofI Agreement.  For example:

  o On February 19, 2013, Ms. Venzant sent Mr. Onwubere and Mr. Husong an email message stating in part, "*I just think things will be better if I continue to keep things the way they are now.*. [sic]  Looking forward to hearing from you. Thanks."

  o On April 3, 2013, she requested a cash advance.

  o On April 29, 2013, she again requested a cash advance.

  o On May 3, 2013, she sent Mr. Husong an email message stating, "Thanks for finally calling me back. .sorry working so couldn't answer my phone but I will call you at noon. .Thank you."

- Documents that Advance produced in discovery indicate that Advance  knew Ms. Venzant had not cancelled the BofI Agreement, and actively assisted her in attempting to extricate herself from her deal with BofI.  For example:

  o On May 13, 2013, Ms. Ray stated in an email message, "I could use the contract itself [referring to the BofI Agreement], to see if they stated there would be a two year delay.  *If they did not, that could be grounds for her to cancel.*"

  o On June 28, 2013, Ms. Ray stated in an email message to Ms. Schwartz that Ms. Venzant "intended to send a formal cancellation letter" to BofI (indicating that she had not already done so), and that Ms. Ray would "secure a copy of said letter" – which, apparently, she had not already done.

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1     In short, there is ample evidence from which a trier of fact could conclude that Ms.

2  Venzant had not in fact decided to repudiate or attempt to terminate the BofI Agreement in

3  April 2013 and had not sent BofI a cancellation letter in February 2013, and that she decided to

4  switch horses from BofI to Advance because Advance solicited her and SCS and Tovey were

5  able to provide prompt funding for a lottery assignment deal.  In other words, the record

6  supports a reasonable inference that but for Advance's sales pitch, SCS's brokerage services,

7  and Tovey's money, the transaction involving Ms. Venzant, Advance and Tovey would not

8  have happened, and Ms. Venzant would have maintained her business relationship with BofI

9  and ultimately performed her obligations under the BofI Agreement.  The Court should

10  therefore deny SCS and Tovey's motion for summary judgment on BofI's tortious-interference

11  claim.

12  **E.      SCS AND TOVEY ARE NOT ENTITLED TO SUMMARY JUDGMENT ON
        BOFI'S UNJUST-ENRICHMENT CLAIM.**

13

14      **1.      Elements of the Claim.**

15      A person has been unjustly enriched when he has profited or enriched himself at the

16  expense of another contrary to equity.  *Farwest Steel Corp. v. Mainline Metal Works, Inc.*, 48

17  Wash.App 719, 731-33, 741 P.2d 58 (1987).  "Unjust enrichment is the method of recovery for

18  the value of the benefit retained absent any contractual relationship because notions of fairness

19  and justice require it."  *Young v. Young*, 164 Wn.2d 477, 484, 191 P.3d 1258, 1262 (2008).  In

20  such situations a quasi-contract or contract implied in law is deemed to exist between the

21  parties.  *Id.*  "[T]he elements of a contract implied in law are: (1) the defendant receives a

22  benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it

23  unjust for the defendant to retain the benefit without payment."  *Young*, 164 Wn.2d at 484-85,

24  191 P.3d at 1262.

25

26

27

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - 15
No. 2:14-CV-00484-BJR

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

**2.      BofI's Unjust-Enrichment Claim Is Not "Predicated on a Finding of Tortious Interference."**

Without citation to authority, SCS and Tovey argue that "[d]ismissal of Plaintiff's tortious interference claim necessarily requires dismissal of the unjust enrichment and declaratory judgment claims because those claims are predicated on a finding of tortious interference to sustain a cause of action." (Motion 12:2-5.)  It is unclear what SCS and Tovey mean by this.  BofI's unjust-enrichment claim is not "predicated on" its tortious-interference claim.  It is an independent cause of action.  *See Nelson v. Appleway Chevrolet, Inc.*, 160 Wn.2d 173, 187-88, 157 P.3d 847, 854 (2007).

**3.      SCS and Tovey Obtained a Valuable Benefit at BofI's Expense.**

SCS and Tovey argue that they did not obtain a benefit at BofI's expense because "BOFI did not own or control Ms. Venzant's future lottery payments, and therefore could not have 'conferred' them on the Defendants." (Motion 12:21-23.)  At most, SCS and Tovey argue, "the BOFI Agreement was an inchoate contract for the lottery payments" that was expressly conditioned on obtaining a court order approving the assignment and a written acknowledgment from the Washington Lottery Commission." (*Id.* at 12:23-13:2.)  "Unless and until the Court authorized the assignment, BOFI did not own or control the future payments." (*Id.* at 13:3-4.)

This is essentially the same argument that the Ninth Circuit Court of Appeals summarily rejected last December.  Advance, SCS and Tovey argued as follows in their Ninth Circuit brief:

> A plaintiff alleging unjust enrichment must demonstrate that a benefit properly belonging to the plaintiff was conferred on the defendant.  *See, e.g., Northwest Airlines, Inc. v. Ticket Exchange, Inc.*, 793 F. Supp. 976 (W.D. Wash. 1992).  The very essence of unjust enrichment is the concept that a defendant received a right or benefit that "belonged to" the plaintiff.  *Young v. Young*, 164 Wash.2d 477, 484, 191 P.3d 1258 (2008).  Here, BofI failed to establish that it conferred a benefit that it owned.
>
> BofI alleged that the benefit being conferred was the right to collect Ms. Venzant's future lottery payments.  However, such a benefit was not "conferred"

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - 16
No. 2:14-CV-00484-BJR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

on Advance Funding by BofI.  Rather, Ms. Venzant cancelled her arrangement with BofI, and entered into a new arrangement with Advance Funding.  (4 ER 584-585.)  There is no claim of unjust enrichment for something conferred on the defendant by a third party.

Moreover, BofI failed to demonstrate that Advance Funding had received a benefit or right which otherwise belonged to BofI.  BofI never actually possessed and had no right to Ms. Venzant's lottery payments as a matter of law. It therefore could not have given them or lost them to Advance Funding. Advance Funding could not have received a benefit from BofI based on an unenforceable obligation.

The Ninth Circuit reversed this Court's summary judgment orders in Defendants' favor,

holding that "[b]ecause the validly formed BofI Agreement violated neither the letter nor the

spirit of the Washington statute, it was not unenforceable as contrary to public policy."  *BofI*

*Federal Bank v. Advance LLC*, No. 16-35006, 705 Fed. Appx. 668, 669 (9th Cir. Dec. 11,

2017).  Therefore, because the BofI Agreement was enforceable, it could support BofI's claims

for tortious interference and unjust enrichment.

The Ninth Circuit's opinion in this case disposes of SCS and Tovey's argument that

BofI cannot maintain a cause of action for unjust enrichment because it did not own or control

Ms. Venzant's future lottery payments.  The argument depends on the assumption that the BofI

Agreement was unenforceable because the Thurston County Superior Court had not approved

Ms. Venzant's assignment of her lottery installments to BofI.  But that argument did not

survive the appeal of this case, and this Court must therefore reject it.

**4.      The Record Supports an Inference that SCS and Tovey Engaged in Wrongful and Unjust Acts.**

In contrast to torts requiring the plaintiff to show wrongful conduct on the part of the

defendant, "the law of restitution requires only that the transferee have received the property of

another under circumstances that result in the transferee's 'unjust enrichment.' "  *Davenport v.*

*Washington Educ. Ass'n*, 147 Wn. App. 704, 726, 197 P.3d 686, 698 (2008).  As the

Washington Supreme Court explained in *Lynch v. Deaconess Med. Ctr.*, 113 Wn.2d 162, 166,

776 P.2d 681, 683 (1989), unjust enrichment occurs "where money or property has been placed in a party's possession such that in equity and good conscience the party should not retain it."

Such circumstances existed in *Nelson*, 160 Wn.2d 173, 157 P.3d 847.  There the Washington Supreme Court held that the plaintiff (Nelson) could maintain a cause of action for unjust enrichment against a used car dealership (Appleway) that had charged him business and occupation ("B & O") tax on top of the final negotiated price for a car.  *Id.* at 178, 188. "Because Appleway illegally charged Nelson the B & O tax as an additional cost to the final purchase price," the Supreme Court reasoned, "Appleway [had] been unjustly enriched with money properly belonging to Nelson.  In effect, Appleway [had] made Nelson pay Appleway's taxes."  *Id.* at 188.

By contrast, the Washington Court of Appeals affirmed the dismissal of an unjust-enrichment claim in *Farwest Steel Corp.*, 48 Wn. App. 719, 741 P.2d 58.  The plaintiff in that case, Farwest Steel, had provided steel to Mainline, a subcontractor on a large construction project.  *Id.* at 721.  The general contractor was Hensel.  *Id.*  During the course of the project, Hensel paid Mainline based on Mainline's certifications that it had paid Farwest.  *Id.*  In fact, Mainline had not paid Farwest, and it went into bankruptcy owing Farwest $150,000.  *Id.* Farwest sued Mainline, Hensel and other defendants to recover the unpaid balance.  *Id.*

The trial court dismissed Farwest's unjust enrichment claim against Hensel, and the Court of Appeals affirmed.  *Id.* at 722, 732-33.  The Court of Appeals concluded that Hensel had been enriched "by receiving but not paying fully for metal goods supplied by Mainline." *Id.* at 732.  However, "[t]here [was] no evidence … that the enrichment was unjust with respect to Farwest or at Farwest's expense":

> Hensel was a mere incidental beneficiary of the contract between Farwest and Mainline.  Hensel did not acquiesce in or encourage the contract with Farwest. Hensel did not mislead Farwest in any fashion.  In short, Hensel did not contribute in any fashion to Farwest's loss.

This case is like *Nelson* and unlike *Farwest*.  Like the defendant in Nelson, SCS and Tovey enriched themselves at the plaintiff's expense.  And unlike the defendant in *Farwest*,

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - 18
No. 2:14-CV-00484-BJR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

SCS and Tovey contributed significantly to BofI's loss by encouraging – indeed, being indispensable to – the contract between Advance and Ms. Venzant that deprived BofI of the benefit to which it was entitled.  SCS and Tovey received and retained that benefit despite their knowledge of the prior BofI Agreement.  Not only did they obtain the benefit of the lottery payments that were diverted to them, they obtained the benefit of the life insurance policy that BofI had procured for Ms. Venzant and for which it had paid the first premium.  In fairness and equity, the benefits that SCS and Tovey arrogated to themselves belonged to BofI.  The Court should therefore deny SCS and Tovey's motion for summary judgment on BofI's unjust-enrichment claim.  In fact, because there is no genuine issue of material fact that SCS and Tovey obtained a valuable benefit at BofI's expense that it would be unjust for them to retain, the Court should enter summary judgment in BofI's favor on this claim.

## F.   SCS AND TOVEY ARE NOT ENTITLED TO SUMMARY JUDGMENT ON BOFI'S DECLARATORY-JUDGMENT CLAIM

SCS and Tovey's argument regarding BofI's claim for declaratory relief is completely off-base.  SCS and Tovey invoke the *Rooker-Feldman* doctrine, which precludes the lower federal courts from "exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463, 126 S. Ct. 1198, 1201, 163 L. Ed.2d 1059 (2006).  *Rooker-Feldman* is narrow in scope, and is "confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.' " *Id.* at 464.  It does not apply here for two reasons.

First, *Rooker-Feldman* does not bar claims brought by federal plaintiffs who were not parties to the prior state-court proceedings. *Id.  Accord Johnson v. de Grandy*, 512 U.S. 997, 1006, 114 S. Ct. 2647, 2654, 129 L. Ed.2d 775 (1994); *Mortgage Elec. Registration Sys., Inc. v. Robinson*, No. 15-55347, 671 Fed. Appx. 562, 563 (9th Cir. Dec. 16, 2016); *Carmona v. Carmona*, 603 F.3d 1041, 1050, 1052 (9th Cir. 2010) (*Rooker-Feldman* did not bar counterclaim for declaratory judgment); *Madison v. Graham*, 316 F.3d 867, 869 n. 2 (2002)

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - 19
No. 2:14-CV-00484-BJR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1  (same, although Ninth Circuit affirmed dismissal of claim on other grounds); *Southern Cal.*

2  *Edison Co. v. Lynch*, 307 F.3d 794, 805 (2002).  The plaintiffs in all the cases cited by SCS and

3  Tovey (Motion 14:19-15:4) had been parties to the prior state-court proceedings at issue.

4       Second, *Rooker-Feldman* does not bar federal claims asserting that state-court

5  judgments were obtained by extrinsic fraud.  *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, (9th Cir.

6  2004).  In other words, the doctrine does not apply when "a federal plaintiff asserts as a legal

7  wrong an allegedly illegal act or omission by an adverse party," as opposed to "assert[ing] as a

8  legal wrong an allegedly erroneous decision by a state court."  *Id., quoting Noel v. Hall*, 341

9  F.3d 1148, 1164 (9th Cir. 2003).  *Accord Carmona*, 603 F.3d at 1050.  The plaintiffs in the

10  cases cited by SCS and Tovey (Motion 14:19-15:4) did not allege extrinsic fraud.

11      BofI was not a party to the proceeding in which the Thurston County Superior Court

12  approved Ms. Venzant's assignment of her lottery payments to Advance.  (Dkt. 39, ¶ 21; Dkt.

13  4, Ex. B.)  In addition, BofI does not contend that the state court made an error of law.  It

14  contends that SCS and Tovey wrongfully entered into an agreement with Ms. Venzant, and

15  improperly obtained the state-court order without advising the Thurston County Superior Court

16  of the prior BofI agreement and without notifying BofI of the proceeding.  *Rooker-Feldman*

17  therefore does not apply, and the Court should deny SCS and Tovey's motion for summary

18  judgment on its claim for declaratory relief.

19  ## IV.    CONCLUSION

20      SCS and Tovey have not established that they are entitled to summary judgment on any

21  of BofI's claims, and the Court should therefore deny their Motion.  In addition, because no

22  genuine issue of material fact precludes summary judgment for BofI on its unjust-enrichment

23  claim against SCS and Tovey, the Court should enter summary judgment in BofI's favor on

24  that claim.

25

26

27

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - 20
No. 2:14-CV-00484-BJR

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

DATED: October 9, 2018

**SAVITT BRUCE & WILLEY LLP**


By: _____*/s/Duncan E. Manville*_____
          James P. Savitt, WSBA #16847
          Duncan E. Manville, WSBA #30304
          1425 Fourth Avenue Suite 800
          Seattle, Washington  98101-2272
          Telephone:  206.749.0500
          Facsimile:  206.749.0600
          Email:  jsavitt@sbwllp.com
          Email:  dmanville@sbwllp.com

Attorneys for Plaintiff BofI Federal Bank

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - 21
No. 2:14-CV-00484-BJR

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the date indicated below, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

DATED this 9th day of October, 2018 at Seattle, Washington.

_____
Rondi A. Greer

CERTIFICATE OF SERVICE
No. 2:14-cv-00484-BJR