The Honorable Barbara J. Rothstein

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| BOFI FEDERAL BANK, a federally chartered banking institution,<br><br>Plaintiff,<br><br>v.<br><br>ADVANCE FUNDING, LLC; KIRK A. TOVEY, individually and as trustee of the KIRK A. TOVEY REVOCABLE TRUST; and SETTLEMENT COLLECTION SERVICE, LLC,<br><br>Defendants. | NO. 2:14-cv-00484-BJR<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DISMISSAL**<br><br>**Noted for October 12, 2018**<br><br>**ORAL ARGUMENT REQUESTED** |

## INTRODUCTION

Despite four years of litigation, Plaintiff has yet to refute the single most compelling evidence in the case, namely Sheena Venzant's sworn testimony: "I did not consult with Ms. Guerra prior to cancelling the BOFI Agreement, nor did she or anyone from Advance Funding LLC try to persuade me to cancel the BOFI Agreement." [Dkt. 30, ¶ 9.]

Cobbling together random emails to claim that an "inference" exists is insufficient to refute direct evidence. The non-moving party must do more than attempt to create a 'metaphysical doubt' or rely on conjecture or conclusory statements. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986); *Triton Energy Corp, v. Square D Co.*,

DEFENDANTS REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 1
2:14-cv-00484-BJR

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

1781361.01

68 F.3d 1216, 1221 (9th Cir. 1995); *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

Even if there was a question about Ms. Venzant's communications to Plaintiff, her statements to Advance Funding were unambiguous.  Ms. Venzant told Advance Funding that she had cancelled; she produced an email from her BOFI representative containing instructions on how to cancel; and she produced a copy of the cancellation letter, properly addressed to the BOFI office in California.  Moreover, a search of the court records confirmed that, more than a year later, no petition had been filed, no notice had been given to the Lottery Commission, and no notice had been served on the Attorney General.  The Defendants justifiably accepted Ms. Venzant's statement that the Agreement had been cancelled.

Tortious interference is an intentional tort, and as such requires proof of intent to interfere.  There can be no intent to interfere where there was a belief that no contract existed.  There is no negligence – "knew or should have known" – standard, and no obligation for the Defendants to have provided notice to or sought permission from the Plaintiff.

Finally, there is simply no legally cognizable basis for finding tortious interference against Settlement Collection Service, Inc. ("SCS") or the Tovey Defendants where they never met or spoke to Ms. Venzant and were not even aware of her name until after the Court Order was entered.

Had Plaintiff done its due diligence and spoken with Ms. Venzant before filing this action, the case could have been avoided.[1]  Summary judgment of dismissal is warranted.

## DISCUSSION

The summary judgment motion was properly captioned as Defendants' motion since it was brought by the only remaining Defendants in the case.  Moreover, as parties in this action, the Defendants are fully entitled to attack every aspect of Plaintiff's claim, including a

---

[1] The Complaint was not filed by BOFI's current counsel.  However, BOFI's prior counsel was put on notice of the serious CR 11 concerns relating to the allegations.

DEFENDANTS REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 2
2:14-cv-00484-BJR

1781361.01



Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

direct challenge to the core issue of whether there was any tortious interference. The fact that Plaintiff obtained a 'default' against Advance Funding does not prevent the remaining parties from challenging the substance of claims.[2] While a default may be operative against the particular party who makes default, it does not bind co-defendants who have appeared in and contested the litigation. 46 Am. Jur. 2d Judgments § 241; *Hawkeye-Security Ins. Co. v. Schulte*, 302 F.2d 174, 177 (7th Cir. 1962).

**A.  Based on Plaintiff's current concessions, it is clear that Plaintiff lacked an enforceable contract.**

In its opposition, BOFI argues that Ms. Venzant was aware of and consented to the two-year postponement for payment. By making this argument however, BOFI reveals that it apparently never had an enforceable agreement. Proof of an enforceable contract is a material element of a tortious interference claim. *Kane v. City of Bainbridge Island*, 866 F. Supp.2d 1254, 1265 (W.D. Wash. 2011); *Point Ruston, LLC v. Pac. Northwest Reg'l Council*, 658 F. Supp.2d 1266, 1275 (W.D. Wash. 2009) *citing Eggster v. City of Spokane*, 121 Wash. App. 799, 811, 91 P.3d 117 (2004). In *Kennedy v. Roda*, 41 Wash. App. 177, 702 P.2d 1240 (1985) the claim was dismissed on summary judgment because the purported contract violated RCW 18.85.330 and was therefore unenforceable. Without an enforceable contract, the tortious interference claim is defective on its face.

The two-year delay in payment is not mentioned in any of the original agreement documents. Neither the Lottery Payment Assignment Agreement (3/7/2012), the Promissory Note (3/7/2012), the Loan Agreement (3/7/2012) nor the two amendments to the Loan Agreement allowed BOFI to postpone payment of the lump sum to Ms. Venzant. (Ex. 1 to the Supplemental Declaration of Susan Fox.) However, once BOFI learned that the insurance

---

[2] This seems especially apt in this case. A default was only possible because the wrongfully filed litigation ultimately forced Advance Funding out of business. Without counsel to represent it, Plaintiff availed itself of a procedural gambit, and obtained a default even though fully aware that Ms. Venzant's testimony refuted the claim. A regrettable example of process over substance.

DEFENDANTS REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 3
2:14-cv-00484-BJR

1781361.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

policy contained a two-year contestability period, it knew a modification or amendment to the BOFI Agreement would be necessary.

- On August 1, 2012, BOFI tried to negotiate a decrease in the contestability period to one year, noting that "We are working on possibly restructuring the deal with Sheena". [Dkt 111, p. 7.]
- According to McLloyd Onwubere, Ms. Venzant agreed to delay her funding for one year. [Dkt 111, p. 6.]
- On August 2, 2012, BOFI learns that "there's no way around the 2 year contestability period." [Dkt 111, p. 7.]
- On August 21, 2012, Mr. Onwubere acknowledged that they will need a "revised contract or amendment to her existing contract for a 2 year delay to fund her deal" and that Ms. Venzant will certainly need money during the two year period. [Dkt 111, p. 12.]
- On August 28, 2012, Mr. Onwubere reported that Ms. Venzant would agree to a two-year delay with a "minimum amount that she will need for each of those 2 years as a partial funding in order for her to wait out the 2 years comfortably." [Dkt. 111, p. 14.]
- On August 29, 2012, Mr. Onwubere reported that Ms. Venzant's "annual number for the 2 year full funding postponement is $25k." [Dkt. 111, p. 17.]

BOFI never had any intention of paying Ms. Venzant her lump sum until the expiration of the contestability period. [Dkt. 39, p. 3, ¶ 12.] Ms. Venzant's willingness to accept the delay was expressly conditioned on receiving an annual $25,000 payment. However, the agreement to delay funding was never memorialized in writing. The BOFI Agreement was never amended and Ms. Venzant never received her additional annual

DEFENDANTS REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 4
2:14-cv-00484-BJR

1781361.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

compensatory payments of $25,000.00.[3]  The BOFI Agreement expressly states that any amendment or modification occurs "only by an instrument signed by the parties." [Dkt 30, p. 11.]  In fact, without a written amendment or modification, the proposed assignment would not have been approved by the Court because the statute requires the agreement be "memorialized in writing and executed by the assignor." RCW 67.70.100(2)(c)(i).

BOFI cannot establish an enforceable agreement because the two-year postponement term was never memorialized in writing or signed by the parties.  Without an enforceable contract, there can be no tortious interference claim.

Even without the two-year delay clause, the BOFI Agreement was unenforceable because the transaction never closed.  According to the BOFI Agreement, the obligation to assign the future lottery payments occurred "upon closing."  [Dkt. 30, p. 5.]  The BOFI Agreement defined "closing" as three days after the completion of all conditions precedent, including a Court Order and Lottery Letter. [Dkt. 30, p. 8.]  BOFI was obligated to "commence and prosecute on action" seeking a court order approving the assignment, which it never did.  By its own terms, the BOFI Agreement never closed.

**B. BOFI's attempt to avoid dismissal of the tortious interference claim misses the mark.**

The bulk of Plaintiff's arguments fail because they focus on the wrong point in time.  In order to prevail on a tortious interference claim, Plaintiff must prove that the Defendants intentionally caused the breach.  *White River Estates v. Hiltbruner*, 134 Wn.2d 761,768, 953 P.2d 796 (1998).  Ms. Venzant made the decision to cancel in early February 2013.  At the time she made the decision, Ms. Venzant had no contact with anyone from Advance Funding.  [Dkt. 30, pp. 2-3.]  Moreover, Ms. Venzant never had any contact with SCS or Tovey so they

---

[3] We know that the subsequent $25,000 was never paid because on February 28, 2014, BOFI wrote to Ms. Venzant, acknowledging the cancellation and demanding that she return the $15,000 payment – which was her original loan amount.

DEFENDANTS REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 5
2:14-cv-00484-BJR

1781361.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

cannot be charged with causing her to cancel.[4]  In fact, during the only relevant time, Ms. Venzant was consulting exclusively with her BOFI representative, Mr. Onwubere.

Plaintiff attempts to create an issue of fact by claiming that it never received the cancelation letter.  This argument, while self-servingly convenient, is wholly insufficient to raise an issue of fact.  The record overwhelmingly supports Ms. Venzant's statement that she prepared and sent the cancellation letter.  Cancellation was consistent with Ms. Venzant's state of mind in February 2013, following a year of waiting for BOFI to pay her the contract sum.  It was consistent with her communications with Mr. Onwubere about needing to "move on" and thereafter receiving express instructions on how to cancel the agreement.  In July 2013, long before there was even a hint of possible litigation, Ms. Venzant produced both the cancellation letter and the email exchange with Mr. Onwubere to Advance Funding.

Moreover, in February 2014, when Ms. Venzant was brushing off attempted communications from BOFI, she reminded them that "you should have received a letter from me many months ago." [Dkt 111, p. 29.]  There was no litigation pending or threatened when Ms. Venzant told BOFI on February 19, 2014, "I mailed a cancellation letter to you a while back bout [*sic*] a year ago.  The transaction has been cancelled a long time ago." [Dkt. 111, p. 32.]

It is perhaps most telling that, when BOFI responded to Ms. Venzant ten days later, it made no mention of having not received the cancellation letter.  Nor did BOFI claim that she had no right to cancel or that the cancellation was ineffective.  Rather, BOFI simply demanded the return of the $15,000 loan, and thereby acknowledged the cancellation. [Dkt. 30, p. 22.]

In any event, the only issue is what Ms. Venzant believed and what she communicated to Advance Funding.  Ms. Venzant's statement that she had cancelled the BOFI Agreement

---

[4] Any early contact by Ms. Guerra is irrelevant because she was not employed by Advance Funding at that time. Dep 24:17-25, 25:1-14, attached as Ex. 2 to the Supplemental Declaration of Susan Fox.

DEFENDANTS REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 6
2:14-cv-00484-BJR

1781361.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

was consistent with the Onwubere email and the fact that, after 15 months there had been no petition filed or court order obtained.

Plaintiff's focus on what, if anything, Defendants learned about the BOFI Agreement after the fact is irrelevant. As discussed above, the only relevant time period is early February 2013 when Ms. Venzant made the decision to cancel her agreement. Without proof of interference at that moment in time, there can be no tortious interference claim.

Any information that Advance Funding subsequently learned was consistent with Ms. Venzant's statement that the Agreement had been cancelled; the copy of the email from Mr. Onwubere with cancellation instructions and a copy of the cancellation letter.

In addition, Advance Funding confirmed that, although the BOFI Agreement was signed in March 2012, more than a year later no legal action had been commenced to get the transfer statutorily authorized. The lack of any court action was consistent with Ms. Venzant's statement that she had cancelled the Agreement.

Similarly, any reference to a UCC filing is a total red herring. The date of the UCC filing was March 2012, at the same time the BOFI Agreement was originally signed and was not inconsistent with the information given to Advance Funding more than a year later, that the underlying transaction had been cancelled in the interim. Moreover, because BOFI never closed the transaction or secured the statutory approval of the proposed transfer, it would not have been able to enforce a lien against the lottery proceeds in the first place. The fact of locating a UCC filing dated March 2012 during a records search was not inconsistent with Ms. Venzant's statement that the transaction was cancelled in March of 2013.

BOFI's reliance on *Scymanski v. Dufault*, 80 Wn.2d 77, 491 P.2d 1050 (1971) and *Valley Land Office v. O'Grady,* 72 Wn.2d 247, 432 P.2d 850 (1967) is misplaced. In *Scymanski*, there was no evidence of repudiation by one of the parties as there is here. To the contrary, both parties were prepared and willing to proceed with the transaction, and the interference claim was based on the defendant refusing to give permission for a transaction

DEFENDANTS REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 7
2:14-cv-00484-BJR

1781361.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

which would have proceeded absent the interference. *Scymanski*, 80 Wn.2d at 85. Those facts are not instructive in a case where, as here, the transaction was dead well before any alleged interference. Ms. Venzant's testimony (the only direct evidence on this issue) is that she terminated the Agreement months before she first spoke with Advance Funding.

The facts in *Valley Land Office* support Defendants' position rather than BOFI's. In *Valley Land Office*, the court held that testimony that one of the parties had *in his own mind* decided not to complete the transaction before the alleged interference was sufficient to defeat a tortious interference claim. *Valley Land Office*, 72 Wn.2d at 856-57. Here, Ms. Venzant's testimony is not only that she had decided in her own mind not to go forward with the transaction months before any contact with the Defendants but that she also had written a letter to BOFI stating her intent not to go forward. Here, the evidence of intent not to proceed with the transaction is much stronger than that which was held sufficient to defeat a tortious interference claim in *Valley Land Office.*

Plaintiff's attempt to extrapolate a tortious interference claim against SCS and Tovey with a tortured agency argument should be rejected out of hand. There is simply no evidence of any contact or communication between SCS or Tovey and Ms. Venzant or any indication that they induced her to cancel the BOFI Agreement. The undisputed evidence is that neither SCS nor Tovey was even aware of Ms. Venzant's name until after the Thurston County Superior Court had entered an order approving the transfer.

As discussed above, the fact that information regarding the BOFI Agreement or the UCC filing was subsequently provided to SCS was not inconsistent with the information Ms. Venzant had originally provided about cancelling the Agreement in the first place. There is simply no evidence that either SCS or Tovey performed an intentional act intended to interfere with the contractual right. Moreover, there is certainly no evidence that either SCS or the Tovey Defendants acted with any ill will. In fact, to the contrary, they were entitled to

DEFENDANTS REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 8
2:14-cv-00484-BJR

1781361.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

rely on information provided by Ms. Venzant that the Agreement had been cancelled and with knowledge that there was no court proceeding, they went forward.

**C.       Plaintiff did not confer a benefit on the Defendants.**

Plaintiff misperceives the very nature of the equitable unjust enrichment remedy. At its core there are two concepts: that plaintiff created something of value; and that it would be unfair to allow the defendant to retain the benefit. In all of the cases discussing unjust enrichment, the plaintiff did or produced something of value. In *Young v. Young*, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008), the respondents cleared and developed a parcel of land, and the court held that it would be unjust to allow the plaintiff to retain the improved lot without remuneration. In *Chandler v. Washington Toll Bridge Authority*, 17 Wn.2d 591, 137 P.2d 97 (1943), estimates, engineering services and other work performed in connection with a bridge project should not be retained without compensation. In each case, the party seeking unjust enrichment had actually provided something of value which the other party sought to retain.

There is no comparable "thing of value" created or transferred in this case. At best, Plaintiff had an unperformed contract. It is not as if BOFI had actually paid Ms. Venzant her contract amount and then lost the right to receive the future lottery payments. Under BOFI's theory, it should be awarded the lottery income stream of over one million dollars even though it never paid the contract amount. The $15,000 Ms. Venzant allegedly received was a loan from BOFI, which presumably it could sue to recover. No amount of that loan payment was ever transferred to the Defendants.

In *Baillie Communications Limited v. Trend Business Systems, Inc.*, 61 Wash. App 151, 159-60, 810 P.2d 112 (1991), the elements were described as "a benefit conferred upon the defendant by the plaintiffs; an appreciation or knowledge by the defendant of the benefit; and the acceptance or retention by the defendant of the benefit under such circumstances as to make it unequitable for the defendant to retain the benefit without the payment of its value." "The retention of a benefit conferred by another, without offering

DEFENDANTS REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 9
2:14-cv-00484-BJR

1781361.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

compensation, in circumstances where compensation is reasonably expected." Black's Law Dictionary, Ninth Edition, 2009.

Unjust enrichment is premised on the theory that an obligation is owed and that, in the absence of an actual contract, equity supplies the remedy. *Bill v. Gattavara*, 34 Wn.2d 645, 650, 209 P.2d 457 (1949). There must be some nexus between the plaintiff and the defendants to establish the obligation which is owed and which therefore demands, in equity, a corresponding recompense. No such relationship exists in this case.

Plaintiff's unjust enrichment claim is defective because the Plaintiff did not – either directly or indirectly – confer a benefit on either SCS or the Tovey Defendants. There is a clear distinction between a contract right, and the right to control the future lottery payments. Even if BOFI had an inchoate contract claim, it never obtained the right to control the future lottery payments because it never obtained statutorily required court approval.[5] The future lottery payments were transferred from Ms. Venzant to Advance Funding, and then assigned to the Tovey Trust. There was never any "benefit" conferred on the Defendants by the Plaintiff, and no cases have been cited in which an unjust enrichment claim was allowed to proceed simply because a competitor ended up with a contract that the Plaintiff wanted but was unable to secure.

Moreover, Plaintiff cannot establish, and has not established, that the Defendants did anything wrong or unjust. It is undisputed that after more than a year, the Plaintiff had failed to obtain or even seek a court order regarding the Sheena Venzant assignment. [Dkt. 30.] Ms. Venzant followed the advice of Mr. Onwubere and cancelled the BOFI Agreement when she got tired of waiting. *Id.* There is no evidence in this case that SCS or the Tovey Defendants had anything to do with Ms. Venzant's decision to cancel the BOFI contract or that they controlled or induced her to do so.

---

[5] BOFI might have an action against Ms. Venzant for breach of contract, but it would never be entitled to specific performance compelling the transfer of the future lottery payments because it would not be acceptable under RCW 67.70.100.
DEFENDANTS REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 10
2:14-cv-00484-BJR

1781361.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

In any event, the Court should deny BOFI's request that the Court *sua sponte* enter summary judgment in its favor. BOFI asks the Court to *sua sponte* enter summary judgment for BOFI on its unjust enrichment claim. Not only is there no support in the record for this, but the court rules and caselaw preclude it. A court may grant summary judgment for a nonmovant or on its own only after giving notice and a reasonable time to respond. F. R. Civ. P. 56(f); *Arce v. Douglas*, 793 F.3d 968, 976 (9th Cir. 2015). Defendants have not had sufficient time or opportunity to respond as this issue was raised for the first time in BOFI's response.

**D.   This court must dismiss BOFI's claim for declaratory relief.**

Federal courts do not intervene in or vacate state court orders, whether or not the party seeking to vacate the order was a party to the state court action. In *Confederated Tribes of Colville Reservation v. Superior Court of Okanogan Cty.,* 945 F.2d 1138 (9th Cir. 1991), ex-spouses were involved in a state court custody dispute. One of the spouses was a member of the Colville Tribe. The Colville Tribe sued the State Superior Court in federal court seeking a temporary restraining order against implementation of the state court's custody decree. *Colville*, 945 F.2d at 1141. The 9th Circuit Court of Appeals noted that the Tribe's federal lawsuit was a "defacto horizontal appeal from state to federal court, an appeal <u>brought by a non-party</u>." *Colville*, 945 F.2d at 1141 (emphasis added.) The court held that "lower federal courts possess no power whatsoever to sit in direct review of state court decisions" and dismissed the Colville Tribe's case. *Colville*, 945 F.2d at 1141-1142.

Similarly, in *Sharma v. City of Redding*, unreported, No. 217CV00487MCEACPS, 2017 WL 2972263 (E.D. Cal. July 12, 2017), the plaintiff in federal court, a stranger to the state court action, sought to set aside the state court's order. The court denied the request, stating that "it is clear that this court has no authority to grant the requested relief… this court simply has no authority to invalidate state court orders." *Sharma*, at *2. In *Georgia-Pacific Corp. v. Putnam*, 528 F. Supp. 606 (S.D. W. Virginia 2007), the court held that an employer

DEFENDANTS REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 11
2:14-cv-00484-BJR

1781361.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

not entitled to declaratory judgment of unenforceability of a family court order in a lawsuit between its employee and the employee's wife.

These cases demonstrate that federal courts do not review, modify, or vacate state court orders, whether at the behest of a party or of a nonparty to the action below. BOFI's remedy (should it prevail and prove compensable damages) would be damages. BOFI would not be entitled to an order from this Court undoing the Thurston County Court's order. The Declaratory Judgment claim should therefore be dismissed.

DATED this 12th day of October, 2018.

By _____
Susan Rae Fox, WSBA #15278
Attorneys for Defendants
Kirk A. Tovey, Kirk A. Tovey Revocable Trust, and Settlement Collection Service, LLC
RYAN, SWANSON & CLEVELAND, PLLC
1201 Third Avenue, Suite 3400
Seattle, Washington 98101-3034
Telephone: (206) 464-4224
Facsimile: (206) 583-0359
fox@ryanlaw.com

DEFENDANTS REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 12
2:14-cv-00484-BJR

1781361.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

# CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury under the laws of the State of Washington that on October 12, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, and caused a copy of the foregoing document to be sent via electronic mail to the following attorneys of record:

James P. Savitt, WSBA #16847
Duncan E. Manville, WSBA #30304
SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue, Suite 800
Seattle, Washington  98101-2272
Telephone: (206) 749-0500
Facsimile: (206) 749-0600
*jsavitt@sbwllp.com*
*dmanville@sbwllp.com*

Attorneys for Plaintiff BOFI Federal Bank

DATED this 12th day of October, 2018.

*/s/ Susan Rae Fox*
Susan Rae Fox, WSBA #15278
Attorneys for Defendants
Settlement Collection Service, LLC, Kirk A. Tovey, and the Kirk A. Tovey Revocable Trust

1201 Third Avenue, Suite 3400
Seattle, Washington  98101-3034
Telephone: (206) 464-4224
Facsimile: (206) 583-0359
*fox@ryanlaw.com*

DEFENDANTS REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 13
2:14-cv-00484-BJR

1781361.01

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359