THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BofI FEDERAL BANK, a federally chartered banking institution,<br>Plaintiff,<br><br>v.<br><br>ADVANCE FUNDING LLC; KIRK A. TOVEY, individually and as trustee of the KIRK A. TOVEY REVOCABLE TRUST; and SETTLEMENT COLLECTION SERVICE, LLC,<br>Defendants. | NO. 14-CV-484 BJR<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

This motion comes before the Court on a Motion for Summary Judgment filed by Defendants Kirk Tovey, individually and as trustee of the Kirk A. Tovey Revocable Trust ("Tovey"), and Settlement Collection Service, LLC ("SCS") (collectively "Defendants"). Defendants seek dismissal of all claims against them asserted by Plaintiff BofI Federal Bank ("BofI"). Having reviewed the pleadings and held oral argument, the Court finds and rules as follows.

## II. FACTUAL AND PROCEDURAL BACKGROUND

A. Factual Background

On November 16, 2011, Sheena Venzant won the Washington State "Lucky for Life" lottery drawing, entitling her to receive $52,000 annually for the rest of her life, or a lump sum

payment of $750,000.[1] Venzant elected to receive the $52,000 annually. Decl. of Sheena Venzant ("Venzant Decl."), Dkt. No. 30, ¶ 2; Decl. of Daniel Hefner ("Hefner Decl."), Dkt. No. 39, Ex. A. After winning the lottery, Venzant was contacted by various companies with offers to provide her a lump sum payment in return for assignment of her future lottery payments. Venzant Decl., ¶ 3. Venzant discussed an agreement with McLloyd Onwubere, then an employee of BofI. *Id*. On March 7, 2012, Venzant entered into an agreement with BofI to assign twenty-five annual payments of $47,000 each to BofI in return for a lump sum payment of $318,401.75. *Id.*; Hefner Decl., Ex. C., p. 18, Ex. D, p. 10, Ex. F.

On the same date, Venzant also entered into a "Life Contingent Payment Addendum" in which Venzant agreed to cooperate with BofI to obtain a life insurance agreement that would pay benefits to BofI should Venzant die prior to the payment of the twenty-five annual payments of $47,000 that Venzant had agreed to assign to BofI. Hefner Decl., Ex. D. The policy contained an incontestability provision (which took effect after two years) and a suicide exclusion (which expired after two years). Hefner Decl., Ex. I at 9. According to BofI, due to regulatory constraints with respect to speculative investments, it was constrained from paying Venzant the lump sum contemplated by the Agreement until the two years had run. Hefner Decl. ¶ 12.

Venzant claims, however, that she never agreed to the delay, and she became "increasingly unhappy and frustrated" because "month after month passed, and I still had not received the lump sum payment." Venzant Decl. ¶¶ 4-5. Venzant states that on February 5, 2013, she wrote a letter to BofI purporting to cancel the assignment and life insurance policy. Venzant Decl. ¶ 5; Ex. C. Several months later, Venzant spoke with an account representative

---

[1] Venzant is not a party to this case.

at Defendant Advance Funding LLC ("Advance"), Barbara Guerra, and agreed to assign her lottery winnings to Advance.[2] Venzant Decl. ¶¶ 8, 10. Venzant entered into such an agreement with Advance on or about May 17, 2013. Decl. of Dan Cevallos, Dkt. No 31, ¶ 3; Decl. of Duncan Manville, Dkt. No. 40, Ex. A. Plaintiff claims it did not receive the February 2013 letter, and denies any knowledge that Venzant intended to cancel her agreement with BofI until nearly a year later. Hefner Decl. ¶¶ 18, 22.

On May 21, 2013, Monica Ray with Northeastern Capital Funding, the entity that worked with Advance on the Venzant transaction, sent an email to Richard Miller, III with SCS, asking whether SCS wanted to buy "this Washington lottery stream." Decl. of Susan Rae Fox, Dkt. No. 111, Ex. 8. Although the subject heading of the email was "VEN (WA)", Defendants claim, and BofI does not dispute, that the email did not contain any potentially identifying details about Venzant. *Id*. On June 3, 2013, Advance filed a Petition for Order Approving Assignment with the Superior Court of Thurston County, seeking approval of the assignment from Venzant to Advance. The petition noted that Advance had assigned all of its rights contained in the Venzant agreement to the Kirk A. Tovey Revocable Trust. Manville Decl., Ex. B. The petition was granted on June 14, 2013. Fox Decl., Ex. 12.

On June 28, 2013, Ray sent Amy Schwartz, an attorney representing SCS and Tovey, a closing binder containing information regarding the sale of the lottery stream investment from Advance to Tovey. Second Decl. of Duncan Manville, Dkt. 71, Ex. B, Advance Dep. Ex. 12; Decl. of Richard Miller, III, Dkt. No. 112, ¶¶ 9&10. It is not disputed that this is the first that SCS and Tovey became aware of any agreement Venzant may have had with BofI. It is also undisputed that SCS and Tovey never had any contact with Venzant at any time. Tovey provided funding and the deal closed in July 2013. Miller Decl., ¶ 9.

---

[2] It is disputed, but for purposes of this motion not material, who contacted whom first.

B. Procedural History

On April 2, 2014, after learning of Venzant's assignment to Advance (and ultimately, Tovey), BofI filed this Complaint. It asserted claims against all Defendants for tortious interference with contract and unjust enrichment, and sought equitable relief and money damages. Compl., Dkt. No. 1. Defendants filed the first motion for summary judgment on February 19, 2015, seeking dismissal of BofI's tortious interference claim. On April 28, 2015, the Court granted the motion, finding that the contract between BofI and Venzant was unenforceable as against public policy, and therefore could not form the basis of a tortious interference claim. The parties subsequently filed additional motions for summary judgment, Defendants seeking dismissal of BofI's remaining claims for unjust enrichment and declaratory judgment, and BofI seeking dismissal of Defendants' tortious interference counterclaim. The Court granted these motions on August 20, 2015 and December 12, 2015, respectively. BofI (but not Defendants) appealed the Court's orders of dismissal. On December 11, 2017, the Ninth Circuit reversed the Court's order, finding that that the BofI-Venzant contract was not unenforceable as against public policy, and remanded to this Court for further proceedings.

On August 16, 2018, BofI filed a motion for default judgment against Defendant Advance Funding, after Advance's attorney, Susan Fox, withdrew her representation. The Court granted that motion on August 20, 2018, as to that Defendant only. The remaining Defendants SCS and Tovey filed the instant Motion for Summary Judgment on September 20, 2018. On October 26, 2018, the Court heard oral argument.

**III. DISCUSSION**

A. Summary Judgment Standard

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine

issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court "should review all of the evidence in the record . . . [and] draw all reasonable inferences in favor of the nonmoving party." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, "[t]he mere existence of a scintilla of evidence" in support of a nonmoving party's position is not sufficient to create a genuine issue of material fact. *Anderson*, 477 U.S. at 252.

B. <u>BofI's Tortious Interference Claim</u>

In order to maintain a claim against Defendants SCS and Tovey for tortious interference with a contract, BofI must establish (1) that it had a valid contractual relationship with Venzant; (2) that Defendants SCS and Tovey had knowledge of the relationship; (3) that those Defendants intentionally interfered, causing a breach or termination of the relationship; (4) that those Defendants interfered for an improper purpose or used improper means; and (5) resultant damages. *Sintra, Inc. v. City of Seattle*, 119 Wash. 2d 1, 28 (1992), citing *Pleas v. City of Seattle*, 112 Wash. 2d 794, 800 (1989).

The analysis of whether Defendants caused a breach of Venzant and BofI's agreement requires an inquiry into *when* such breach may have occurred. Venzant testified in her declaration that in February 2013, she wrote and sent to BofI a letter repudiating the contract. Venzant Decl., ¶ 7, Ex. C. Based on this undisputed testimony, Defendants argue that a contractual relationship between BofI and Venzant no longer existed by the time Venzant signed her agreement with Advance in May 2013. BofI claims, however, that it did not receive the letter, and that the parties to the contract continued to act, at least through April 2013, as if it were still in place. *See, e.g.,* Hefner Decl., Ex. B (internal BofI records referencing email to BofI from Venzant stating "I just think things will be better to keep things the way they are now."). Whether Venzant effectively repudiated the BofI contract in February 2013, therefore, appears to be a dispute of fact.

5

What is not disputed, however, is that Venzant signed a contract with Advance Funding on or about May 17, 2013. Manville Decl., Ex. A. Under that contract, Advance agreed to pay Venzant $300,000.00 in exchange for assignment to Advance of her "right, title and interest in and to Twenty (20) partial annual lottery prize payments each in the amount of $50,000.00, which represent the payments due to me from the Washington State Lottery." *Id*. The payments to Advance were to begin in November 2013 and run through November 2032. *Id*. In other words, on May 17, 2013, Venzant entered into a contract with Advance that was incompatible with her performance of the BofI contract. In doing so, Venzant acted in a manner that made it legally impossible for her to comply with the BofI contract, and therefore at that moment she breached any agreement she may still have had with BofI. *See Wallace Real Estate Inv., Inc. v. Groves*, 124 Wash. 2d 881, 898 (1994) ("[A]n anticipatory breach is a positive statement or action by the promisor indicating distinctly and unequivocally that he either will not or cannot substantially perform any of his contractual obligations."); Restatement (Second) of Contracts § 250 (1981) ("A repudiation is . . . a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach.").

What is also undisputed is that Defendants SCS and Tovey did not learn of Venzant's identity until it received the transaction closing binder on June 28, 2013. Decl. of Richard Miller, III, ¶ 10; *see also* Transcript [Rough Draft] of October 26, 2018 hearing, 12:24-13:1 (counsel for BofI stating "there's also no dispute that the evidence indicates that SCS and Tovey were not aware of the BOFI agreement until June 28, 2013"). This fact is fatal to BofI's tortious interference claims against SCS and Tovey. Although Monica Ray, on behalf of Advance, contacted SCS on May 21, 2013, soliciting bids on a "Washington Lottery stream" investment opportunity, the undisputed evidence indicates that Advance did not share any identifying details with SCS at that time. *See* Fox Decl., Ex. 8. Advance did not share with SCS and Tovey detailed information regarding the investment opportunity until June 28, 2013,

over a month after Venzant's indisputable breach with BofI.[3] That date was the first SCS and Tovey learned of either Venzant and her lottery winnings, or any agreement she may or may not have had with BofI.

A claim of tortious interference requires a defendant to have knowledge of the plaintiff's contractual relationship, and for defendant to have *induced* or *caused* the breach. *Sintra, Inc*., 119 Wash. 2d at 28. The undisputed evidence demonstrates that SCS and Tovey did not have knowledge of the Venzant-BofI agreement if and when Venzant breached it. They could not have caused Venzant to enter into a contract with Advance Funding on May 17, 2013, because they were not even aware of her identity at the time, let alone any existing contract she may have had with BofI.

At oral argument on this motion for summary judgment, counsel for BofI argued that despite Defendants' ignorance of Venzant's identity at the time she breached the agreement with BofI, Defendants SCS and Tovey nevertheless "caused" the breach because they *subsequently* agreed to purchase the income stream. BofI claimed that had Defendants failed to do so, "there is every reason to believe" Venzant would have honored her contract with BofI. Tr. of Hearing, 13:15-16.

To the contrary, there is no reason to believe this. The record is devoid of any evidence (or even allegation) that Advance's contract with Venzant was dependent on Defendants' funding. The agreement explicitly authorized Advance to reassign the payments, but did not require it to do so, and did not make performance contingent on Advance obtaining a secondary assignee. Manville Decl., Ex. A at 8. Indeed, the agreement explicitly provided "both parties recognize that this Agreement is enforceable upon execution." *Id*. at 6. There is, moreover, no evidence that either Venzant or Advance had any intention of breaching their

---

[3] To be clear, the Court is not finding that Venzant breached her agreement with BofI; merely that if an enforceable agreement between Venzant and BofI still existed as of May 17, 2013, Venzant's execution of the contract with Advance at that time constituted a breach of that Venzant-BofI agreement.

agreement if SCS and Tovey failed to provide funding. Counsel's claims at oral argument are wholly insufficient to create a dispute of fact, let alone support a claim of tortious interference. BofI's tortious interference claim against Defendants SCS and Tovey must therefore be dismissed.

### C. BofI's Unjust Enrichment and Declaratory Judgment Claims

"Three elements must be established in order to sustain a claim based on unjust enrichment: a benefit conferred upon the defendant by the plaintiff; an appreciation or knowledge by the defendant of the benefit; and the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Young v. Young*, 164 Wash. 2d 477, 484, *citing Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc*., 61 Wash. App. 151, 159–60 (1991).

As outlined above, SCS and Tovey had no part in Venzant's repudiation of her agreement with BofI. By the time Advance shared any specific details about the lottery investment with CSC and Tovey, Advance had a binding contract with Venzant and an order from the Thurston County Superior Court approving assignment of the lottery winnings to Advance. Under these circumstances, it is not inequitable for SCS and Tovey to retain the benefit of their purchase. Moreover, BofI has failed to demonstrate that it conferred a benefit to SCS and Tovey. Any benefit SCS and Tovey received was assigned by Advance, not BofI.

Finally, BofI has not demonstrated that it is entitled to relief in equity. It chose to delay performance of its obligations under the agreement with Venzant, who the record demonstrates was quite desperately in need of the money. Without finding that BofI delayed performance of the agreement in anything other than good faith, it is nevertheless indisputable that had BofI expeditiously performed its end of the deal with Venzant, this dispute never would have arisen. It is not only *not unjust* that Defendants keep the benefit of the bargain they made with Advance; it would in fact be patently unjust for the Court to undo it. BofI's claim for unjust

enrichment is therefore dismissed. There being no basis for a declaratory judgment, that claim is dismissed as well.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby grants the Motion for Summary Judgment of Defendants SCS and Tovey and dismisses this case in its entirety.

Signed this 5th day of November, 2018.

Barbara Jacobs Rothstein
U.S. District Court Judge